[No. 1325, August 29, 1910.]

LAS VEGAS RAILWAY AND POWER COMPANY, a Corporation, and WILLIAM A. BUDDECKE, Appellants, v. THE TRUST COMPANY OF ST. LOUIS COUNTY, a Corporation, Appellee.

### SYLLABUS.

1. Examination of the record fails to disclose any proof that the court did not take full and complete proofs.

2. A mere inference cannot be held to contradict a plain recital in the decree to the effect that certain things were duly and regularly done.

3. Under articles of deed of trust the defaulting corporation should have, first, a written demand made upon them to cure any default, and then, a period of sixty days thereafter in which to devise ways and means of overcoming such default.

4. In the deed of trust there were no restrictions upon the rights and powers of the trustee to institute proceedings to foreclose such deed of trust.

Ry. & Power Co. et al. v. Trust Co..

5. The complaint sufficiently states facts to constitute a cause of action as it properly and sufficiently alleges demand and requisition upon the trustee by a majority of the bond holders.

6. There was no such showing of fraud as would have warranted the court in vacating the decree of foreclosure.

7. Not only is the price for which the property was sold, inadequate, but there are also additional circumstances which render it inequitable to permit the sale to stand. The purchaser is conceded to be a disinterested party and purchased in good faith. The sale should be set·aside and a new sale ordered therefore only upon terms.

Appeal from the District Court for San Miguel County before JOHN R. McFIE, Associate Justice. Sale set aside and new sale ordered upon terms. Otherwise affirmed.

VEEDER & VEEDER, and W. B. and FORD W. THOMPSON for Appellants.

Default is tantamount to a complete denial of plaintiff's cause of action and requires of the court that it have full proof thereof, before it gives judgment therefor. Blair v. Bartlett, 75 N. Y. 150; Freeman on Judgments, sec. 330; White v. Merritt, 7 N. Y. 352.

The power of the trustee to take legal proceedings to enforce payment of the amount secured should be strictly construed. Guaranty Trust Co. v. Green Cove Railroad, 139 U. S. 137, 142; Chicago & Vincennes R. R. Co. v. Fosdick, 106 U. S. Rep. 47, 76; Farmers Loan & Trust Co. v. C. & N. P. R. R. Co., 61 Fed. 543, 546; Central Trust Co. v. Worcester Cycle Mfg. Co., 93 Fed. 712, 718; Potomac Manufg. Co. et al, v. Evans, 6 S. E. Rep. 2.

Fraud or misconduct in the purchaser, or fraudulent negligence in any other person connected with the sale as the agent of the mortgagor, or of persons interested as judgment creditors, and also surprise created by the conduct of the purchaser, will induce the court to re-open the biddings. Collier v. Whipple, 13 Wendell N. Y. 224,

227; Fix v. Loranger et al, 15 N. W. Rep. 81; Pacific R.
R. v. Ketchum, 101 U. S. Rep. 289; King v. Platt, 37
N. Y. 160; Kellogg v. Howell, 62 Barb. 280, 291; Am.
Ins. Co. v. Oakley et al, 9 Paige Chancery 259, 261;
Brown et al, v. Frost, 10 Paige Chancery 243, 245; Mc-
Cotter v. Jay, 30 N. Y. Repts., 80, 81; Robinson v. Iron
Railway Co., 135 U. S. Repts., 522, 531; Kent v. Lake Su-
perior Canal Co., 144 U. S. Repts., 75, 88, 91; Goodell
v. Harrington, 76 N. Y. 547; 2 Daniel's Chancery Prac-
tice 1291; 27 Cyc. 1701, 1715, 1717; 9 Enc. of P. & P.
535; Innes v. Stuart, 36 Mich 285; Morris v. Woodward,
et al, 25 N. J. Eq. 32; Atkins v. Judson, 53 N. Y. Sup.
504; Herndon v. Gibson, 17 S. E. Rep. 145; Hamilton
v. Hamilton, 46 Am. Dec. 58; Requa. v. Rea & Wife, 2
Paiges Chancery 339, 341; Colier v. Whipple, 13 Wendell,
N. Y. 224, 232; Blossom v. The Milwaukee Sts. R. R.
Co., 1 Wallace U. S. 655.

Inadequacy of price, accompanied by additional cir-
cumstances of unfairness, growing out of fraud, accident
or some trust relation, are good grounds against confirma-
tion. Fidelity Trust & Safety Vault Co. v. Mobile St.
Ry. Co., 54 Federal Reporter 26; Graffan v. Burgess, 117
U. S. 180; Pewabic Mining Co. v. Mason, 145 U. S. 349.

CHARLES A. SPIESS and WM. G. HAYDON for Appellee.

Statutes of New Mexico authorize judgment by default.
C. L. 1897, sec. 2685, sub-secs. 106, 134; Laws 1905, ch.
26.

Power of court to set aside judgment ceased upon ex-
piration of statutory time for filing motion to set aside.
23 Cyc. 907, 999; Canadian Co. v. Clarita, etc., Co., 74
Pac. 301, 302; in re Eichoff, 36 Pac. 11; Eichoff v. Eichoff,
40 Pac. 24; Long v. Fink, Cal. 50 Pac. 1060; Moore v.
Superior Court, 25 Pac. 22, 31 Pac. 899; Blondo v. Sny-
der, 31 Pac. 591; Butler v. Soule, 56 Pac. 601; People
v. Green, 16 Pac. 197; People v. Harrison, 24 Pac. 311;
Jacks v. Valdez, 31 Pac. 899; Thornton v. Harlan, 9 Pac.
727; People v. Temple, 37 Pac. 414; People v. Davis, 77
Pac. 651; Bronston v. Schulton, 104 U. S. 410; 26 L. ed.
799; Barnett v. Barnett, 9 N. M. 205; Phillips v. Negley,
117 U. S. 665; Maynard v. Perault, 30 Mich. 161; Allen

v. Wilson, 21 Federal 882; Terry v. Commercial Bank of Alabama, 92 U. S. 454; Sloan v. Sloan, 102 Ill. 581.

If the court had jurisdiction of the parties and subject matter, the title of a bona fide purchaser is good, notwithstanding there may have been errors or irregularities in the proceedings which rendered the decree invalid. 24 Cyc. 41, 65, pars. 5, 6; Branley v. Damley, Minn., 71 N. W. 1026; Freeman on Executions 343; Brignardelo v. Gray, U. S., 17 L. ed., 697; Voorhees v. Jackson, 10 Peters 339, L. ed., 491; Grignon v. Astor, 2 Howard, U. S., 319; 12 Enc. P. & P. 91, par. 10 and cases cited; Freeman, Void Judicial Sales, par. 41; Quigley v. Breckenridge, Ill., 54 N. E. 580; Wilson v. Kellogg, 77 Ill. 47; McLean, etc., Co. v. Swofford Bros. Dry Goods Co., 68 Pac. 502, Okla.; Mercantile Trust Co. v. M., K. & T. Ry. Co., 36 Fed 223; Morgan's L. T., etc., Co. v. Texas Central, 137 U. S 171; Guaranty Trust & Safe Deposit Co v. Green Cove, etc., 139 U. S. 137, 35 Law 116; Dow v. Memphis, etc., R. R. Co., 20, Fed. 265; Credit Co. v. Arkansas Cent. R. Co, 15 Fed. 46; Farmers' Loan & Trust Co. v. Winona, etc., Co., 59 Fed. 957; Farmers' Loan & Trust Co. v. Chicago, etc., 61 Federal, 543; Mer. Trust Co. v. Chicago, etc., 61 Federal 374.

Limitations contained in a mortgage, restricting the right of foreclosure, must be strictly construed. Toler v. East Tennessee V. & G. Ry. Co., 67 Fed. 179; Guaranty Trust & Safe Dep. Co. v. Green Cove Springs & M. R. Co., 139 U. S. 137; Railroad Co. v. Fosdick, 106 U. S. 47; Morgan's L. & T. R. & S. Co. v. Texas, etc., Co., 137 U. S. 171; Farmers L. & T. Co. v Winona & S. W. R. Co., 59 Fed. 957; Mercantile Trust Co. v. M. K. & T. Ry. Co., 36 Fed. 221.

Suit was not prematurely brought and demand for performance was not required for the purposes of this suit. Mercantile Trust Co. v. Chicago P. & S. L. Ry. Co. 61 Fed. 372; Mercantile Trust Co. v. M. K. & T. Ry. Co., 36 Fed. 223; Louisville & N. R. Co. v. Schmidt, 52 S. W. 840 Ky.; State Trust Co. v. Kansas City P. &. G. R. Co., 120 Fed. 406; Central Trust Co. v. Texas & St. L. Ry. Co., 23 Fed. 846; 33 Cyc. 562 b.

## STATEMENT OF FACTS.

This is a proceeding in equity brought by appellee against the Las Vegas Railway and Power Company (a corporation) and William A. Buddecke, to foreclose certain deeds of trust made in favor of said appellee to secure the payment of bonds of the Las Vegas Railway and Power Company to the amount of $300,000.00; the said deeds of trust conveying the franchise and all property, real and personal of the appellants situated at Las Vegas, in the County of San Miguel and Territory of New Mexico. The bill of complaint in said cause was filed on the 28th day of September, A. D., 1908, and service was made upon the said defendants, who appeared, but filed no answer, and afterwards a decree pro-confesso was obtained and a final decree entered in said cause against them on the 5th day of December, A. D., 1908, providing for the sale, at public auction of all of the property mentioned and described in the several trust deeds, to pay said bonds amounting to $300,000.00 and the interest thereon.

Thereupon a special master was appointed to make the sale of said property who thereafter gave public notice thereof and fixed the date of sale on Monday the fifteenth day of March, 1909, at the east front door of the court house in Las Vegas, San Miguel County, Territory of New Mexico, and on said last mentioned date all of said real estate and premises, personal property and franchises were sold to Joseph M. Cunningham for the sum of $65,-000.00. At the time of the sale, notice of protest against it was given by William A. Buddecke, and afterwards on the tenth day of April, A. D., 1909, and before the confirmation of the sale, he filed said protest in writing. On the same day there were various other protests in writing filed by various owners and holders of bonds of the said Las Vegas Railway and Power Company. Together with these protests was filed a motion to set aside and annul the sale of said property. The grounds upon which these protests were made were, in brief, that one G. W. Garrels, both before the time of the sale, and at the time of the sale, prevented competitive bidding at the said sale, and also that the price for which the said property was sold

was inadequate and did not represent its fair market value. Many affidavits, both in support of the protests and in opposition thereto, were filed and the same were taken up for hearing by the court, and on the 15th day of April, 1909, an order was entered confirming the sale. Afterwards, on May 13, 1909, appellants filed a demurrer and motion in said cause to set aside the default and decree pro-confesso, also the order of sale and all of the proceedings had thereunder, for the reason that the same was null and void, the bill of complaint not stating facts sufficient to constitute a cause of action, and that the court was thereby without jurisdiction to enter the decree herein, also alleging that the said suit was instituted in fraud of the company and its stockholders, and in fraud of the minority bondholders, and that the decree was caused to be entered in fraud of said parties. The demurrer and motion were also overruled by the court. From which ruling on said motion and demurrer, an appeal was taken to this court.

, Such further statement of facts as is necessary for the determination of the issues, is contained in the opinion.

### OPINION OF THE COURT.

WRIGHT, J.—The appellants assigned only two grounds of error and in their brief discuss them in the reverse order from that in which they are assigned. An examination of the second assignment of error, and the discussion in the brief thereon, discloses the fact that the appellants rely upon the question of irregularity in the entering of the decree, and the question as to whether or not the complaint states facts sufficient to constitute a cause of action.

Under this assignment of error, appellants contended that upon default being made in any case in equity, as the case at bar, that such default was tantamount to a complete denial of the plaintiff's cause of action, which required that the court take full proof of all the material allegations of the complaint before judgment could be

entered thereon. An examination of the record, however, fails to disclose any proof whatever that the court did not take full and complete proofs. The appellants attempt to sustain their contention by certain inferences drawn from the trust deeds and complaint.

The final decree entered herein contains the following recital:

"On this day the above entitled cause coming on before the court for trial and judgment, plaintiff being represented by William G. Haydon, its attorney, the defendants not appearing, but having made default as hereinafter shown, and the court having heard the evidence in said cause, finds:"

It therefore appears from the record in the case *affirmatively* that evidence of all of the material allegations in the complaint was heard by the court. A mere inference cannot be held to contradict a plain recital in the decree to the effect that certain things were duly and regularly done. We think, therefore, that no further discussion of this question is necessary.

A consideration of the other branch of the second assignment of error involves the direct determination of whether or not under the terms of the deed of trust, sought to be foreclosed, the complaint states a cause of action. The appellants contended that an examination of the deed of trust and the allegations of the complaint would disclose that the action to foreclose was prematurely brought, contending that articles 3 and 4 of the deed of trust, in order to justify the trustee in initiating proceedings to foreclose said deed of trust, required that there must have been, first, a default on the part of the railway and power company in some one of the covenants contained in said trust deed; second, a demand upon the railway and power company to cure such default, either by payment or performance; third, a continuous default for sixty days after such demand; fourth, a requisition in writing signed by the holders of a majority in value of the outstanding bonds asking for a foreclosure after such sixty days have elapsed. The appellant's contention was based upon the wording of articles 3 and 4 of the deed of trust, which reads as follows:

## ARTICLE III.

"If the Railway and Power Company, its successors or assigns, shall at any time hereafter make default, or refuse or neglect or omit for sixty days after the same shall fall due, and be demanded to pay any half yearly installment of the interest payable upon the bond or any of them intended to be hereby secured, or shall make default, or refuse or neglect, or omit for sixty days after they shall fall due, and be demanded to pay the principal sum of each and all of said bonds, or shall fail for sixty days after, faithfully to keep the covenants in this deed contained, to be kept and performed by the said Railway and Power Company, then, and in either such case the trustee or its successors in trust created or declared in and by this deed, personally, or by its attorney or agents may forthwith enter into and upon, and take possession and control of all and singular the real estate, etc. * * And have, hold, and use the same, operating by its superintendents, * * *

## ARTICLE IV.

"In case any continuous default shall be made as provided in article three hereof, or in case the Railway and Power Company shall make default in the performance of any of the other provisions of these presents, then and in such case, if a majority in value of the outstanding bonds hereby secured, shall so elect, the whole principal of the bonds hereby secured shall thereupon be declared by the trustee to be, and shall immediately become due and payable; and it shall be lawful for the trustee, upon request in writing, signed by the holders of a majority in value of said bonds then outstanding, and upon being indemnified to its satisfaction to institute proper proceedings at law or in equity to enforce the lien hereby created, or cause the said property to be taken in execution and sold under such process for the payment of the debts, principal and interest hereby secured; or, the trustee may upon like request and indemnity enter upon and take possession of all of said real estate, * * * * AND PROCEED TO SELL the same." * * * (after due advertisement has been made.)

The contention of the appellants is based solely upon

these two articles. Article six of the said deed of trust provides as follows:

"It is hereby declared and decreed by and between the parties hereto, that it shall be the duty of and it is hereby made obligatory upon the trustee, upon being requested so to do, in manner as hereinafter provided, by the holder or holders of a majority in value of the bonds at the time outstanding, and on being indemnified to its satisfaction, to take needful steps which may be requisite to protect the rights of the holders of the bonds secured hereby." (Then follows a provision as to the form of a requisition.) * * * The trustee shall proceed forthwith to enforce the rights of the trustee and of the bond holders under these presents, by sale or entry, or by judicial proceedings according to such requisition, provided that in the meantime and until such requisition by a majority of the bond holders shall have been as above provided, the trustee shall have full power and authority to commence and prosecute such proceedings at law or in equity from time to time as it may deem necessary, or proper for the due perfection (protection) and enforcement of the rights of the bond holders or any of them under these presents."

The two sections of the complaint of which the appellants complained are sections 12 and 13.

Section 12 reads as follows:

"That continuous default has been made in the terms and conditions of said deed of trust in this, that the said mortgagor, the Las Vegas Railway and Power Company, the defendant herein, has failed and neglected to pay the interest coupons of said bonds, that it has failed to pay the taxes assessed against its property that it has failed to pay the sum of fifteen hundred ($1500.00) dollars, to create a sinking fund as provided by the terms of said deeds of trust."

Section 13 reads as follows:

"That on account of such defaults and under and by virtue of the terms of said deeds of trust and the request made in said written requisition, plaintiff herein, the trustee in said deed of trust, hereby declares all of said indebtedness, principal and interest now due and payable, and

has so declared, and notified said company as by Exhibit "F" heretofore attached is shown."

An examination of articles 3 and 4 of the deed of trust discloses the fact that these two articles, taken as a whole, refer to the extraordinary remedies and powers which are given to the trustee to enforce the covenants of the deed of trust. These are extraordinary and arbitrary powers given to the trustee, whereby he can take immediate possession and control of all of the corporeal properties and franchises of the company, and either operate them for the benefit of the creditors of the company or dispose of them under the usual power of sale contained in deeds of trust and mortgages. Under the provisions of these two articles it is no more than right and just to the defaulting corporation that it should have, first: A written demand made upon them to cure any default, and then a period of sixty days thereafter in which to devise ways and means of overcoming such default. The appellants contend that the requirements set out in article 3 and article 4 would also apply to any proceedings in law or equity that might be brought by the trustee to enforce the covenants of such deed of trust. A careful reading of article 6, however, fails to disclose that any such restrictions are contained in that article upon the rights and powers of the trustee to institute proceedings to foreclose such deed of trust. The appellants further contend that these limitations upon the power of the trustee to take legal proceedings to enforce the deed of trust should be strictly construed against the right of the trustee to bring such proceedings, and that such limitations went, not only to the extraordinary remedies provided in articles 3 and 4, but to all his powers under such deed of trust, and in support thereof they cite Guaranty Trust Company v. Green Cove Railroad, 139 U. S. 127.

An examination of the opinion in this case, however, discloses no such rule, in fact, it is rather to the contrary.

In the opinion in this case upon this very point, the court uses the following language:

"A case nearer in point is that of Morgan's Steamship Co. v. Texas Central Railway, 137 U. S. 171, decided

at the present term, in which the condition was that on default continuing for sixty days in the payment of interest or any part of principal, the principal of the bonds shall become immediately due, and that upon request of seventy-five per cent of the holders of bonds, and written notice of the same, the trustee should take possession of the property, and operate it for the benefit of the bond holders, and that upon like request he should proceed to foreclose the mortgage and sell the property to the highest bidder for cash. It was also provided that nothing contained in the instrument should be construed to prevent or interfere with the foreclosure by any court of competent jurisdiction. It was held that the trustee could maintain a bill to foreclose the mortgage upon occurrence of a default, without averring or proving a request of seventy-five per cent. of the bond holders, as such request was necessary only in case the trustee wished to proceed to foreclose or take possession *ex mero motu* without the intervention of the court.

"We think that such limitations upon the power of the trustee to take legal proceedings to enforce payment of the amount secured, should be strictly construed. In this case, the condition only relates to the taking possession of the property under the deed of trust, or to a sale in the city of Philadelphia, under the power of sale contained therein, and we think it should not be held applicable to foreclosure proceedings begun in a court of competent jurisdiction to obtain a judicial sale of the property. This was the ruling in the eighth circuit, by Judge Dillon in Alexander v. Central Railroad of Iowa, 3 Dillon 487; and by Judge Caldwell in Credit Co. v. Arkansas Central Railroad Company, 15 Fed. Rep. 46; and we think it is sound."

In the deed of trust involved herein there is no restriction placed upon the powers of the trustee in Article 6.

The next question involves the determination of whether sections 12 and 13 of the complaint, under article 6 of the deed of trust, sufficiently state the fact of default on the part of the appellants herein. While it is true that neither one of said articles contains any statement that demand was made upon the company and sixty days had

elapsed since said demand, still, under the provisions of article 6 of the said deed of trust no such statement was necessary and they undoubtedly correctly and sufficiently state the fact of default. Section 10 properly and sufficiently alleges demand and requisition upon the trustee by a majority of the bond holders. We therefore hold that the complaint sufficiently states facts to constitute a cause of action.

Under the remaining assignments of error the appellants contend that the court should have vacated and set aside the sale and dismissed the entire proceedings.

They set out three reasons why the decree, as distinct from the sale, should be set aside, as follows:

First. Because the record shows that at the time the complaint herein was filed none of the defaults complained of existed or could exist, for the reason that the complaining parties had waived the same. This contention is based upon the terms of a certain contract entered into on January 20, 1908, whereby the owners of the majority of the bonds, who afterwards, instigated the suit to foreclose, agreed to clip the interest coupons from their bonds for a period of five years and accept notes of the appellant company payable February 15, 1913, in payment thereof, thereby waiving their rights to claim a default in payment of interest.

Second. Because the requisitions made upon the trustee to proceed to foreclose were direct violations of such contract.

Third. Because such contract of January 20, 1908, superseded during its life, the said deeds of trust as to all parties thereto and they were thereby estopped; that each and all of the defaults and grounds for instituting proceedings to foreclose, set out in such pretended requisitions were such as the parties had waived by their said agreement.

An examination of such agreement and requisitions discloses that the requisitions set out three alleged defaults, namely, in payment of interest, in payment of taxes and in providing for a sinking fund, while the agreement refers only to the default in payment of interest.

That default was made in payment of taxes and in providing for a sinking fund, and is nowhere denied. Such being the case, the foregoing objections of the appellants are not well founded.

The appellants further contend that there was fraud in the inception of the suit. This contention is not borne out by the record. While it is true that there may have been some sharp practice indulged in by one G. W. Garrels in getting possession of the bonds from the then owner, August Barthels, one of the protestants against the confirmation of the sale, yet, the fraud, misrepresentation and breach of trust, set out by the affidavits and exhibits filed by the protestants, go to the sale rather than to the proceedings prior to the entry of the decree of foreclosure.

The record shows that there was no question of fraud until long after the decree was signed. All parties were unanimous that a foreclosure was necessary.

There was, therefore, no such showing of fraud as would have warranted the court in vacating the decree of foreclosure, even admitting that the motions were timely.

This brings us to the remaining phase of the assignment of error, namely, the motion to vacate and set aside the judicial sale.

The properties and franchises of the appellant company sold for $65,000.00. To be deducted from this are the cash assets, including cash on hand, and lighting bills for the current month, amounting in all to about $8,000.00. leaving the net amount derived from said sale, about $57,000.00.

The undisputed evidence is that the properties and franchises of the appellant company were worth from $100,000.00 to $120,000.00. That a guaranteed bid of $100,000.00 was submitted by the protestants when the sale was before the court for confirmation.

All of the evidence offered in support of the motion to vacate and set aside the sale, as well as that in opposition thereto, are by way of affidavits and documentary evidence. It appears therefrom that one August Barthels, the owner of just one-half of the bonds, had an agreement with one

G. W. Garrels and others, prior to the commencement of this suit, to the effect that they were to put up money and bid in this property at an amount approximating $100,-000.00, with the intention of reorganizing the appellant company upon a paying basis and thereby saving something out of the wreck for the said August Barthels. That it was due to this agreement that Barthels consented to and did sign the requisition upon the trustee, as a result of which the foreclosure suit was commenced. It also appears in the evidence that this agreement had been declared off by Garrels and some of the other parties thereto, yet that no notice thereof was given to Barthels prior to the sale. Relying upon this agreement, Barthels made no effort to be present at the sale and protect his interests. It further appears that the said G. W. Garrels was president of the Franklin Bank of St. Louis, Missouri, and as trustee held $150,000.00 worth of bonds of the appellant company, as collateral security for certain notes endorsed by said August Barthels, which notes were held by the Franklin Bank. It also appears that the said G. W. Garrels was a director and large stockholder in the Trust Company of St. Louis County, the trustee named in the original deeds of trust. He was also the prime mover in obtaining a foreclosure of the trust deeds so that his bank could realize upon its collateral security. It further appears that Garrels had agreed with the officers of the First National Bank of Las Vegas, New Mexico, not to dispose of these bonds which he held as trustee for Barthels, except upon notice to the First National Bank of Las Vegas so that it could protect its interests under a note for $9,000.00 held by it, endorsed by Barthels. Notwithstanding this agreement, Garrels, on the day of sale, in the presence of J. M. Cunningham, the purchaser of the properties of the appellant company, disposed of these same bonds to one James M. Thorpe at twenty-five cents on the dollar, at private sale, an hour before the time of the judicial sale of the properties of the appellant company, without notice to any of the other interested parties.

It also appears from the affidavits filed in support of the protest, and undenied by the said Garrels, that on the

way over to the court house at Las Vegas, Garrels came to the conclusion that he had made a mistake in selling the aforesaid bonds at twenty-five cents on the dollar; that he endeavored, in the presence of J. M. Cunningham, to get back the bonds which he had sold; stating that if the property brought $100,000.00 he would have to account to Barthels and others for any excess over twenty-five cents on the dollar that might be realized to the bond holders by the judicial sale.

Later on, at the sale, when he discovered that the First National Bank of Las Vegas was bidding, he rushed up to Mr. Raynolds, the representative of the bank, and said: "For God's sake, don't bid, I have sold my bonds." Mr. Raynolds swears that because of this action by Mr. Garrels he made no further bids, thinking that an arrangement had been made to protect the bank, when, in fact, he would have been ready to bid $120,000.00 for the property if any notice had been given by Mr. Garrels in accordance with his agreement. The First National Bank of Las Vegas was one of the protestants against the confirmation of such sale.

To briefly sum up the foregoing it appears:

1. The property was worth from $100,000.00 to $120,000.00 at the lowest estimate.

2. It was sold for a sum approximating $57,000.00, after deducting the cash assets.

3. At least two parties vitally interested in the sale were prevented from bidding at the sale by the action of G. W. Garrels.

4. A guaranteed bid of $100,00.00 was submitted along with the protest by appellants.

Under the practice of the English Court of Chancery, prior to the change of the rule by statute at a later date, as a general rule, biddings at judicial sales could be reopened and a re-sale ordered where, before confirmation of the sale, an offer was made for a 10 per cent advance on the bid and an indemnity to the purchaser. After confirmation, however, there must be other additional circumstances besides the offer of an increased price before the sale could be set aside.

The English practice, however, has not been generally adopted in the United States.

The general rule in the United States is as follows:

In Blanks et al., v. Farmers' Loan and Trust Co. et al., 122 Fed. 849, the court states the rule as follows:

"It is perfectly well settled that a judicial sale will not be set aside for inadequacy of price unless it be so gross as to shock the conscience, or unless there be additional circumstances which would make it inequitable to allow the sale to stand. Graafan et al. v. Burgess, 117 U. S. 180, 6 Sup. Ct. 686, 29 L. ed. 839; Powabic Mining Co. v. Mason, 145 U. S. 349, 12 Sup. Ct. 887, 36 L. ed., 732; C. S A Sixth Circuit Court in Meagan v Segal, et al., 34 C. C. A. 323, 92 Fed. 252; Fidelity Insurance, etc., Co. v. Roanoke, Iron Co., C. C., 84 Fed. 752; Fidelity Insurance Co., etc., v. Roanoke St. Ry. Co., C. C., 98 Fed. 475; Beach Mod. Eq. Prac., sec. 824; Am. & Eng. Enc. of Law, 2nd ed., vol. 17, p. 1,000, verbis "Judicial Sales" and numerous cases there collated."

The rule as stated in Cyc., is as follows:

"But when in connection with the inadequacy of price there are other circumstances having a tendency to cause such inadequacy, or any apparent unfairness or impropriety, the sale may be set aside, although such additional circumstances are slight and if, unaccompanied by inadequacy of price, would not furnish sufficient ground for vacating the sale." 24 Cyc. 39-40 and cases cited.

Upon this question the United States Supreme Court, in Schroeder v. Young, 161 U. S. 337, says:

"While mere inadequacy of price has rarely been held sufficient in itself to justify setting aside a judicial sale of property, courts are not slow to seize upon other circumstances impeaching the fairness of the transaction, as a cause for vacating it, especially if the inadequacy be so gross as to shock the conscience. If the sale has been attended by any irregularity, as if several lots have been sold in bulk where they should have been sold separately, or sold in such manner that their full value could not be realized; if bidders have been kept away; if any undue advantage has been taken to the prejudice of the owner of the

property, or he has been lulled into a false security; or, if the sale has been collusively, or in any other manner, conducted for the benefit of the purchaser, and the property has been sold at a greatly inadequate price, the sale may be set aside, and the owner permitted to redeem." See also Morton v. Morton, 7 Ky. Law Rep. 752; State v. Brooks, 2 Bland 42; Johnson v. Rowe, 1 Ky. Law Rep. 274.

It has also been held that where a stranger or third person becomes a purchaser in good faith that the mere offer of a higher price will not be sufficient to warrant the setting aside of the sale, unless there has been fraud and misconduct of the master or other person having control of the sale, or surprise upon the party interested, which proceeded from or were caused by the purchaser or some person connected with or having the management of the sale. Mahoney v. Macukbin, Trustee, et al., 52 Maryland 357; Collier v. Whipple, 13 Wendell, 224, 227; Lefevre v. Laraway, 22 Barbour, 173.

It cannot be contended for a moment, in the case at bar, that the price realized at the sale, under all of the proofs submitted in support of and in opposition to the protest against such sale, was other than grossly inadequate.

It then remains to be determined whether there are any other and additional circumstances which would impeach the fairness of the sale and make it inequitable to allow the same to stand. In deciding this point it is also necessary to determine whether August Barthels and the First National Bank of Las Vegas, New Mexico, were prevented from bidding at the sale by any accident, mistake, fraud or misrepresentation which proceeded from or was caused by the purchaser, some person interested in, connected with or having the management of such sale.

G. W. Garrels, up to a few moments prior to the actual sale, had occupied the position of a creditor of the appellant company and as such was vitally interested in such sale. So far as the officers of the First National Bank of Las Vegas knew, he still occupied that position at the time of the sale. All of his acts which resulted in the bringing of the suit to foreclose, and the negotiations with Barthels were carried on while he, Garrels, occupied the

position of a creditor. During all of this time he was also a director and stockholder in the Trust Company of St. Louis County, the trustee bringing the foreclosure suit. Later, by reason of his sale of the bonds, whereby he placed himself in the position of being compelled to account to Barthels, the owner of the equity in such bonds, in event of the sale of the properties and franchises of the appellant company at a price which would net more than the amount due on the notes endorsed by Barthels, he suddenly becomes very active in his endeavors to keep down the bidding at such judicial sale.

It is true that there is no fraud or misrepresentation directly traceable to J. M. Cunningham, the purchaser at such judicial sale, and it cannot be said that there was any collusion between G. W. Garrels and J. M. Cunningham, the purchaser, but the activities of G. W. Garrels are so interwoven with the entire transaction, and he appears in so many different capacities that his interest in and connection with the sale, are such as to bring his misconduct within the rule laid down in the case of Collier v. Whipple and Lefevre v. Laraway, cited *supra.*

It therefore follows: Not only is the price grossly
7    inadequate but there are also additional circumstances
     which render it inequitable to permit the sale to stand.

However, as the purchaser, J. M. Cunningham, is conceded to be a disinterested party, and undoubtedly purchased in good faith, it is only just and proper that the sale should be set aside and a new sale ordered only *upon terms.*

It is therefore ordered that if, within thirty days from date hereof, the appellants, or some one in their behalf, shall deposit with the District Court of San Miguel County the sum of one hundred thousand ($100,000.00) dollars, the amount of their guaranteed bid, such sum to be taken and considered as a bona fide bid for the properties and franchises of the appellant company upon a resale thereof, then and in that event the decree confirming the sale herein shall stand reversed and the sale set aside, and a new sale be made in accordance with the original decree and mandate without further action of this court to issue

accordingly. Upon a resale being so ordered the court below shall make such adjustment of the rights of the original purchaser, J. M. Cunningham, as to interest, costs, expenses and liabilities incurred because of such original sale so vacated and set aside as to the court may seem just.

Upon failure, however, of the appellants to so deposit the sum of $100,000.00 the judgment of the lower court will stand affirmed with costs, and mandate without further action of the court to issue accordingly, and it is so ordered.