818 P.2d 411

**CROWN LIFE INSURANCE COMPANY,**
**Plaintiff–Appellant,**

v.

**CANDLEWOOD, LTD., a New Mexico**
**Limited Partnership, John M. Freeman**
**and Sandia Federal Savings and Loan**
**Association, Defendants–Appellees,**

and

**Jack Stahl, Intervenor–Appellee.**

No. 19217.

Supreme Court of New Mexico.

Sept. 24, 1991.

As Amended on Denial of Rehearing
Oct. 28, 1991.

Miller, Stratvert, Torgerson & Schlenker, Alice Tomlinson Lorenz, Albuquerque, for Appellant.

Moses, Dunn, Beckley, Espinosa & Tuthill, Leonard G. Espinosa, Steven J. Hile, Albuquerque, for intervenor-appellee.

Hinkle, Cox, Eaton, Coffield & Hensley, Margaret C. Ludewig, Albuquerque, for appellee Sandia Federal.

OPINION

MONTGOMERY, Justice.

Plaintiff-appellant Crown Life Insurance Company (Crown Life) appeals from the trial court's judgment refusing to set aside a foreclosure sale and confirming intervenor-appellee Jack Stahl's exercise of his right, acquired by assignment, to redeem the property sold. We consider whether the court had jurisdiction to entertain Stahl's petition for redemption, including

whether NMSA 1978, Section 39–5–18 (Repl.Pamp.1991), requires a redemptioner to file a separate action for a redemption certificate, and whether the court erred in refusing to vacate the sale based on gross inadequacy of price and other equitable considerations. We affirm on the jurisdictional issue, holding that Stahl was not required to initiate a new action to redeem. However, on the second issue, we reverse and remand for entry of an order vacating the foreclosure sale on the ground that the inadequate sale price combined with additional circumstances make it inequitable to allow the sale to stand.

## I.

Crown Life is a Canadian life insurance company doing business in Canada and forty-two states in the United States, including New Mexico. Crown Life held a mortgage securing a debt of some $1.9 million (not including interest) on an apartment complex in Albuquerque. The debtors were appellees Candlewood Limited, a New Mexico limited partnership (Candlewood), and John N. Freeman (Freeman). Candlewood and Freeman defaulted on the loan, and Crown Life successfully prosecuted a foreclosure action, obtaining a default judgment for $2.6 million. The apartments were ordered sold at a public auction under supervision of a special master.

Crown Life used the services of Metmor Financial Corporation (Metmor) and Metmor's agent, Larry Sands, to manage its New Mexico loans. Crown Life relied on Sands' opinion and analysis to determine an appropriate bidding strategy at the foreclosure sale. Because the property was in a state of disrepair, was not fully occupied, and had significantly depreciated in value, Crown Life determined that it would not take title to the property. It decided instead to seek competitive bids and not to accept less than $1 million at the auction sale. An appraisal conducted for Crown Life had estimated the value of the property to be $1.29 million at the time of default and foreclosure.

Crown Life therefore instructed Sands to obtain a minimum bid of $1 million. The

auction sale was widely advertised and Crown Life received numerous inquiries about the sale. Although sixteen persons attended the auction, only two other parties besides Crown Life bid for the property. Sands misunderstood Crown Life's instructions and failed to obtain a minimum bid of $1 million for the property. Bidding started low, and Sands simply increased rival bids. Sands' last bid of $200,010 was the final and winning bid.

The result of the sale apparently shocked representatives of Crown Life. However, Crown Life asserts that based on Sands' representations it believed there was nothing it could do but confirm the sale. Crown Life also asserts that it understood that the property could be redeemed only by payment of the full judgment amount, rather than merely the foreclosure sale price. Consequently, it instructed its attorney to prepare an order confirming the sale. The sale was confirmed the day after Crown Life was advised of the results of the bidding.

Intervenor-appellee Stahl, an Albuquerque real estate investor, learned of the sale after it had been confirmed and also was "shocked" to hear the property had been sold for such a low price. He consequently decided to try to purchase Freeman and Candlewood's statutory redemption rights, as well as the rights of the second mortgagee, appellee Sandia Federal Savings and Loan Association, and to acquire the property for himself. Stahl was successful in acquiring each party's redemption rights and petitioned the court for a certificate of redemption. At that point, Crown Life sought to have the foreclosure sale vacated, the mortgage reinstated, and a new sale ordered.

Crown Life advanced three principal arguments in the court below: (1) That the court lacked jurisdiction to entertain Stahl's petition or lost jurisdiction thirty days after entry of the order confirming sale; (2) that the assignments of redemption rights to Stahl were invalid and unenforceable; and (3) that the court should set aside the sale for inadequacy of price or for other equitable reasons. At the hearing,

Crown Life also offered to reimburse Stahl for his "costs" if the sale were set aside, which Crown Life in its brief in this Court clarified as meaning the amount paid by Stahl for the redemption rights plus costs and attorneys' fees. The court rejected Crown Life's arguments and ordered the district court clerk to issue Stahl a certificate of redemption.

On appeal, Crown Life repeats its contention that the court lacked, or lost, jurisdiction to consider Stahl's petition for redemption and also argues that on legal and substantial evidence grounds the court erred in failing to set aside the foreclosure sale.

## II.

Stahl filed his petition and amended petition for a certificate of redemption (collectively referred to here as the "petition") in the same action that Crown Life originally filed for foreclosure on its mortgage. Stahl was not a party to the action at the time he filed the petition, but later filed a motion to intervene, which was granted by the court.

■ Crown Life first argues that Section 39–5–18 required Stahl to file a new and original action for redemption and that the court therefore lacked jurisdiction to consider Stahl's petition in the foreclosure action. Crown Life contends that several provisions in this section—those requiring that redemption be pursued by "petitioning" the district court (subsection A(2)), that service of the petition be made upon the purchaser (subsection B), and that the purchaser "answer" the petition (subsection C)—indicate that the legislature intended the right of redemption to be asserted only by initiating a new action. Crown Life asserts that the term "petition" is commonly understood to be an initiatory pleading and that it is used as such in various New Mexico statutes.

However, we do not believe the legislature intended to require the right of redemption to be exercised only by commencing a new action. We do not attach to the term "petition" in the redemption statute the same procedural significance as does Crown Life. A petition is essentially just an application made to a court requesting judicial action of some kind, *see* 32A *Words and Phrases,* "Petition" (1956); it may, but need not, refer to an initiatory pleading.

It makes little sense to require a redemptioner to file a brand new action. There are two aspects to any foreclosure proceeding: the judgment holding the debtor liable, followed by proceedings to enforce the judgment, including the sale of the property. *See Speckner v. Riebold,* 86 N.M. 275, 277, 523 P.2d 10, 12 (1974). It is clear that the court adjudicating the action on the debt has continuing jurisdiction over the foreclosure sale. *Id.* The right of redemption does not arise until the property is sold, and the exercise of that right is merely a continuation of the process of enforcing the mortgage and the rights and liabilities flowing from it. To require a new action would unnecessarily sever from the original proceeding what should be an integral part of that proceeding, and might well take the case away from a judge already familiar with the details of the controversy between the parties.

We do not believe the legislature intended such a result. In the very similar arena of execution sales, the legislature has provided that the court in which the judgment or decree is rendered "shall have jurisdiction over all matters growing out of the levy or sale under any execution." NMSA 1978, § 39–4–1 (Repl.Pamp.1991). We see no indication that the legislature intended the opposite of this common-sense provision for a foreclosure proceeding. We hold that a petition for redemption under Section 39–5–18 may be filed in the original foreclosure action.

■ Crown Life next argues that the court lacked jurisdiction to entertain Stahl's petition for redemption because Stahl filed his petition before his motion to intervene was granted and at a time when he was not a named party to the action. However, when the interest of an original party has been transferred during the pendency of the proceeding, as occurred here, our rules permit the action to be

continued by the party who has acquired the interest. SCRA 1986, 1–025(C) (substitution of parties upon transfer of interest). And, contrary to Crown Life's assertion that the court was required to order Stahl joined or substituted as a party before it acquired jurisdiction, it is well established that:

The most significant feature of [Federal] Rule 25(c) [identical to our Rule 1–025(C)] is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on his successor in interest even though he is not named.

7C C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* § 1958, at 555 (2d ed. 1986). Although the court in its discretion may order joinder, substitution, or intervention of the party to avoid confusion or facilitate the conduct of the litigation, it is not required. The court had jurisdiction to entertain Stahl's petition.

■ Crown Life finally argues, under the jurisdictional issue, that even if Stahl was permitted to petition the court in the existing action, his petition was actually a "motion" subject to the time limitation on a ruling contained in NMSA 1978, Section 39–1–1 (Repl.Pamp.1991). The court's failure to rule on Stahl's "motion" within thirty days from the entry of judgment as required by that section, Crown Life argues, resulted in the automatic denial of his petition. However, even assuming that Stahl's petition for a certificate of redemption constituted a "motion * * * directed against such judgment" so as to trigger applicability of Section 39–1–1—which we question in the first place—our case law makes it abundantly clear that the time limit for a court's ruling under Section 39–1–1 does not apply to a motion that another statute authorizes to be brought within a period of time longer than thirty days. *See Wooley v. Wicker,* 75 N.M. 241, 244–45, 403 P.2d 685, 687–88 (1965); *Archuleta v. New Mexico State Police,* 108 N.M. 543, 546–47, 775 P.2d 745, 748–49 (Ct.App.1989). Section 39–5–18 permits a petition for a certificate of redemption to be filed within nine months from the date of sale; and even if the parties to a mortgage choose to shorten the redemption period, the instrument must in any event provide for a period of not less than thirty days. NMSA 1978, § 39–5–19 (Repl.Pamp.1991). The time limit set by Section 39–1–1 for the court's ruling on a motion therefore does not apply to a petition for a certificate of redemption.

The court had jurisdiction to entertain Stahl's petition.

## III.

We agree with Crown Life's second contention, however—that the court erred in refusing to set aside the foreclosure sale based on inadequacy of price and other equitable circumstances. We very recently reviewed the law in New Mexico, and elsewhere, relating to situations in which a judicial sale will be set aside on the ground that the price paid at the sale is inadequate, including situations in which, in addition to price inadequacy, there are other circumstances that would make it inequitable to allow the sale to stand. *Armstrong v. Csurilla,* 112 N.M. 579, 591, 817 P.2d 1221, 1233 (1991). Following *Las Vegas Railway & Power Co. v. Trust Co. of St. Louis County,* 15 N.M. 634, 649, 110 P. 856, 861 (1910), we held that there are two instances in which equity will intervene to set aside a judicial sale where the price, compared with the value of the property sold, is inadequate: when the disparity is so great as to "shock the court's conscience," and when, in addition to an inadequate price, there are additional circumstances leading to unfairness. *Armstrong,* 112 N.M. at 591, 817 P.2d at 1233–34. We held in *Armstrong,* however, that there was no evidence of the value of the property at the time of sale; that the parties seeking to vacate the sale had not satisfied their burden to produce evidence as to such value so that the court could compare the value with the sale price; and that, accordingly, the sale would not be set aside.

■ In the present case, evidence of the value of the property was introduced at trial, including an appraisal performed for

Crown Life and one performed for Sandia Federal. This evidence suggested a value in the range of approximately $880,000 to $1,290,000.[1] The court made no finding as to the value of the property or even as to the approximate range of its worth. However, even under the lowest estimate, the purchase price was less than 23% of value, and in all probability represented only about 15% of the property's worth. However insensitive the court's conscience, this disparity, under the circumstances of this case, should shock it.[2]

But we need not and do not rely solely on the exceedingly low relationship between price and value for our conclusion that the trial court abused its discretion in refusing to vacate the judicial sale in this instance. "Additional circumstances," of the kind found lacking in *Armstrong*, were present here and would lead, in our opinion, to an inequitable result were the sale permitted to stand. Those additional circumstances include a classical reason for intervention by a court of equity—namely, the purchaser's *mistake*—to which must be added the severe loss the purchaser (Crown Life) will suffer and the sheer windfall the redemptioner (Stahl) will receive if the sale is confirmed.

Mistake, of course, is a fountainhead of equity jurisprudence. *See generally, e.g.,* 3 J. Pomeroy, *A Treatise on Equity Jurisprudence* §§ 838–871(h) (5th ed. 1941). *The trial court found that Crown Life made a mistake.* In fact, Crown Life made two mistakes: Its agent, Sands, did not understand that he was to secure a minimum bid of $1 million; and Crown Life did not realize that the legal consequence in New Mexico of the successful bid of $200,010 was that the property could be redeemed for that amount. These were mistakes, as the trial court found, of a

unilateral nature; they were also mistakes attributable to Crown Life's own negligence, and they were at least in part mistakes of law.

There are various formulations of the law on setting aside a transaction due to a party's mistake which might justify refusing relief to Crown Life where its mistake is characterized in these various ways—*i.e.*, as negligent mistake, unilateral mistake, and mistake of law. However, for every such formulation there is an equal and opposite reformulation. For example: "Even a clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby." 3 J. Pomeroy, *supra* § 856b, at 341 (citing, *inter alia, Pickering v. Palmer*, 18 N.M. 473, 138 P. 198 (1914)). And: "Even where the [unilateral] mistake was not in any way due to the conduct of the other party, and the latter did not know a mistake was being made, equity may cancel the contract if its enforcement will inflict on the party seeking rescission hardship out of all proportion to the value of the other party's justifiable expectation interest." H. McClintock, *Handbook of the Principles of Equity* § 90, at 243–44 (2d ed. 1948). And: "[I]n practice the courts give relief for * * * mistakes [of law] on almost the same principles that they apply where the mistake is one of fact." *Id.* § 92, at 248.

The loss to Crown Life if the sale is confirmed and if Stahl is permitted to redeem will be something over $2 million. However, given Crown Life's undertaking to indemnify Stahl for any loss he incurs in connection with the transaction, including attorney's fees (which offer we expect to be included in the order on remand as a condition of ordering a resale of the property),[3] Stahl's out-of-pocket cost if the sale is

---

1. The $880,000 figure was more speculative than the higher figure since it was not an estimate of actual value, but rather was based on an estimate of the as-repaired value at $1,480,000 after approximately $600,000 worth of repairs.

2. In *Armstrong*, we suggested—but did not hold—that a price in the range of 10–40% of value may well shock the judicial conscience, and that a price of 40–70% of value, when

combined with inequitable circumstances, may justify vacating the sale. 112 N.M. at 593, 817 P.2d at 1235.

3. *See id.* § 25 ("He who seeks equity must do equity.").

After the original filing of this opinion, Stahl and Sandia Federal moved for rehearing, contending among other things that the

not confirmed will be zero. He will, of course and as the trial court found, lose the benefit of his bargain; but his claim to protection of this expectation interest is weak, since nothing Crown Life did *induced* him to change his position or otherwise suffer detrimental reliance. He simply saw a bird's nest on the ground and, quite innocently and properly, scooped it up.

As Professor McClintock says, "the true principle is to balance all of the equities." *Id.* § 90, at 243. The trial court is uniquely suited to doing this job, and we would not upset its exercise of discretion in doing that job unless its choice from the range of reasonable alternatives appeared clearly out of bounds, or unless by omitting some critical determinant it disabled itself from reaching an informed decision. In this case, the court's omission to determine the value of the property disabled it from making an informed decision on whether the purchase price was so grossly inadequate as to shock the court's conscience, and we accordingly have no confidence that the resulting decision was within bounds. Our own view of the evidence suggests that it was not.

We affirm in part and reverse in part, with instructions to vacate the previous foreclosure sale and to order a new sale of the property.

IT IS SO ORDERED.

FRANCHINI, J., and ALARID, Chief Judge Court of Appeals (sitting by designation), concur.

SOSA, Jr., C.J. and BACA, J., dissent.

RANSOM, J., not participating.

BACA, Justice (dissenting).

Although I find Justice Montgomery's opinion persuasive, I respectfully dissent. I would affirm the trial court's judgment on all issues, including its decision not to set aside the foreclosure sale and to confirm Stahl's exercise of his right to redeem the property.

It is well-settled law that "a judicial sale will not be set aside for inadequacy of price unless it be *so gross as to shock the conscience,* or unless there be *additional circumstances* which would make it inequitable to allow the sale to stand." *Las Vegas Ry. & Power Co. v. Trust Co.,* 15 N.M. 634, 649, 110 P. 856, 861 (1910) (quoting *Blanks v. Farmers' Loan & Trust Co.,* 122 F. 849, 849 (5th Cir.1903) (emphasis added)). I am not convinced this purchase price was so gross as to shock the conscience of the court. Nor am I persuaded that in addition to the purchase price, there are other circumstances that would make it inequitable to allow the sale to stand.

In the instant case, the trial court exercised its sound discretion in declining to vacate the judicial sale. Absent a clear showing of an abuse of discretion, that decision should not be disturbed on appeal. *Wolf & Klar Cos. v. Garner,* 101 N.M. 116, 679 P.2d 258 (1984). The court specifically found that the price at which Crown Life (and thus Stahl) purchased the property at the sale was not so low as to shock the conscience of the court. While for the purposes of review it would have been preferable for the court to have clarified its rea-

---

indemnification of Stahl referred to in the text did not cover certain items and needed clarification, and that we had omitted altogether provision for indemnification of Sandia Federal. We agree in part with these contentions and so clarify our instructions with respect to indemnification of these parties as follows: Stahl shall be indemnified for all attorney fees and costs incurred, both in the district court and on appeal, including any fees incurred through the entry of judgment on the mandate, plus interest thereon at the statutory rate, and the amounts paid to Candlewood ($50,000) and Sandia Federal ($25,000), plus interest thereon at the statutory

rate. Stahl shall not be indemnified, as he requests, for "an amount sufficient to compensate [him] for his personal time expended in this matter," or for the "business opportunities lost in pursuit of this matter and as a result of having his funds tied up for over two years." Sandia Federal shall be indemnified for the attorney fees and costs incurred by it associated with the litigation of Stahl's attempted redemption, plus interest thereon at the statutory rate. Sandia Federal shall not be indemnified, as it requests, for the $150,000 expectancy that Stahl would have paid to it had Stahl been issued a certificate of redemption.

sons for its conclusion, the lack of additional findings on this issue does not mandate the reversal of an otherwise sound trial court decision.

Although the court made no precise finding as to the value of the property, there was sufficient evidence before it in the form of testimony and appraisals for the court to conclude that the purchase price did not shock its conscience. While conflicting inferences may be drawn from evidence presented, on appeal the evidence is viewed in the aspect most favorable to the action of the court. *Jones v. New Mexico Racing Commission*, 100 N.M. 434, 671 P.2d 1145 (1983). If the record is doubtful or deficient, we will indulge every presumption in support of the court's judgment. *Luxton v. Luxton*, 98 N.M. 276, 648 P.2d 315 (1982).

The evidence at the trial established that the value of the property "as repaired" was approximately $1,480,000. Deducting an estimated $600,000 for repairs, the estimated value of the property at the time of sale was roughly $880,000. Thus, it appears that, in addition to the sale price, Stahl would have to invest an additional $600,000 for an investment worth perhaps $880,000 to $1,290,000. Considering the circumstances of this case and indulging every presumption in favor of the trial court's decision, a comparison of the figures does not lead to the conclusion that the low bid price was so gross as to shock the conscience.

The majority also contends that the presence of "other circumstances" when combined with an inadequate price impeach the fairness of the transaction. Here, despite the absence of any misconduct,[1] the majority relies on circumstances surrounding Crown Life's mistakes and the loss Crown Life incurred as compared to Stahl's "windfall" to justify vacating the sale.

The trial court, however, determined that these mistakes were unilateral mistakes, mistakes of law, and the result of Crown Life's own negligence. As a general rule, when the party's mistakes are so characterized, the trial court is justified in refusing relief. H. McClintock, *Handbook of the Principles of Equity*, § 90, at 244 (2d. ed. 1948). I am not persuaded that sufficient grounds exist to support the majority's application of the exception to this general rule. Generally, "when relief is allowed for a unilateral mistake, the court has stressed the knowledge of the mistake by the other party." *Id.* Whereas, in this case, as the majority opinion notes, Stahl's actions were "innocent and proper." So far as I can determine from the record and as the trial court found, Stahl did not commit any wrong in this transaction. The court found that Stahl was unaware of the bidding instructions, and any mistakes made by Crown Life were unilateral and not induced in any way by Stahl. The sale was widely advertised and the bidding was competitive. Nothing in the record indicates that there was any unfairness in the manner in which the sale was consummated, and the court's findings have ample evidentiary support. *See First National Bank v. Garrett*, 80 N.M. 239, 453 P.2d 759 (1969).

Nor am I persuaded that the hardship to Crown Life is so great as to justify vacating the judicial sale. Both Stahl and Crown Life were knowledgeable in the ways of business, and both sought to use their best business judgment, expertise, and resources in an attempt to gain some advantage from this particular business venture. While it appears that Stahl may have gained the edge in the course of this transaction, his investment remains a speculative venture. At the time of the sale, the property was in extremely poor condition, requiring approximately $600,000 in repairs. Even if Stahl invests additional funds to repair these apartments, there is no guarantee that he will be able to make a profit where Crown's debtors could not.

---

1. In *Las Vegas Railway & Power Co. v. Trust Co.*, 15 N.M. 634, 110 P. 856 (1910), we listed a number of additional circumstances that justify vacating the sale. The identifying characteristic of each of the listed circumstances is the mis-conduct by the purchaser or other person connected to the sale. *Id.* at 650, 110 P. at 861. Here, there is no finding of misconduct, rather the court found only that Crown made several mistakes.

Based on the record, one would need to resort to conjecture to determine whether Stahl actually acquired a windfall. At best, he purchased an uncertain investment at a moderately good price.

Many business undertakings are speculative in nature, and, therefore, give rise to numerous and sometimes large investment losses. Under these circumstances, I do not believe that our role is to equitably intervene to remedy the unfortunate effects of an unsound business decision. While our function is to apply legal rules and principles to right wrongs and remedy injustices, *Armstrong v. Csurilla,* 112 N.M. 579, 817 P.2d 1221 (1991), here, I perceive no violations of any rule or princi-ple. The trial court clearly determined that Crown Life failed to overcome the presumption of regularity attending the judicial sale. *Id.* at 594, 817 P.2d at 1236; *see* 59 C.J.S. *Mortgages* § 752(e) (1949). In this instance, I cannot say the court abused its discretion in denying Crown Life equitable relief.

SOSA, C.J., joins in dissent.