793 P.2d 1337

**Mary MORGAN, Petitioner–Appellant,**

v.

**TEXAS AMERICAN BANK/LEV-
ELLAND, Respondent–Appellee.**

No. 18805.

Supreme Court of New Mexico.

June 15, 1990.

Templeman & Crutchfield, C. Barry
Crutchfield, Lovington, for petitioner-appel-
lant.

James F. McDowell, III, Clovis, for re-
spondent-appellee.

## OPINION

WILSON, Justice.

This case arose under an action initiated
by Texas American Bank/Levelland (the
Bank), respondent-appellee, to foreclose a

mortgage it held on real property owned by Mary Morgan (Morgan), petitioner-appellant. During this action a mortgage First Federal Savings & Loan Association of Clovis (First Federal) held on the north 75.35 feet of the property (the front parcel) was also foreclosed. The front parcel was sold at a judicial sale and the trial court determined that Morgan could redeem the parcel for the sum of $64,177.34 plus ten percent interest from May 5, 1989, until paid. Morgan appeals the redemption price set by the trial court.

FACTS

Morgan originally owned an undivided one-half interest in real property in joint tenancy, subject to First Federal's mortgage on the front parcel. Morgan's joint tenant later mortgaged his undivided one-half interest in the entire property to the Bank and then conveyed his remaining interest in the entire property to Morgan. Morgan then owned the front parcel subject to First Federal's mortgage and subject to the Bank's mortgage on an undivided one-half interest in that parcel. Morgan owned the rear parcel subject to the Bank's mortgage on an undivided one-half interest in that parcel. As a result, First Federal held a first priority mortgage on the front parcel, Morgan held a second priority position as to her original undivided one-half interest in the front parcel, and the Bank held a second priority mortgage on the remaining undivided one-half interest in the front parcel. The Bank held a first priority mortgage on a one-half undivided interest in the rear parcel.

At a foreclosure sale on April 2, 1986, the Bank bid $115,000 for the entire property; representing the amount of First Federal's first priority mortgage ($39,318.40) plus the amount it was entitled to recover under the judgment of foreclosure ($75,681.60). The Bank paid $39,318.40 to First Federal in cash at the sale.

On April 9, 1986, Morgan petitioned the trial court to redeem the front parcel and deposited $40,000 with the court clerk, representing the amount the Bank paid First Federal for its first priority mortgage plus interest. The Bank rejected Morgan's tendered redemption claiming the redemption price was $115,000. Morgan appealed the matter to this court to determine the terms and conditions of her redemption rights.

On appeal we determined that the Bank had no claim against Morgan's original undivided one-half interest in the property. *Texas American Bank/Levelland v. Morgan*, 105 N.M. 416, 733 P.2d 864 (1987). On remand, the trial court could not determine what portion of the Bank's bid was attributable to the front parcel of the property and ordered that the property be resold in separate parcels.

On June 29, 1987, the trial court entered a second judgment and decree of foreclosure and ordered that the property be resold in two separate parcels. At the second sale on April 7, 1989, the Bank bid $65,000 for the front parcel, representing a credit for the amount it previously paid to First Federal ($39,318.40) plus an additional $25,429.70. The Special Master's Deed was drafted on April 13, 1989, and the court confirmed the sale on April 20, 1989. Morgan then petitioned the trial court to allow redemption of the front parcel for $40,000. The trial court determined that, as of May 5, 1989, the proper redemption price for that parcel consisted of:

| | |
|---|---|
| 1. The amount paid to First Federal; | $39,318.40 |
| 2. Costs of the sale; | $ 256.13 |
| 3. One-half of the amount bid in excess of the lien payment to First Federal and costs; and | $12,712.73 |
| 4. Ten-percent interest on the amount paid to First Federal from April 26, 1986, to May 5, 1989. | $11,890.08 |
| TOTAL | $64,177.34 |

The trial court reasoned that since Morgan and the Bank each held a second priority position as to an undivided one-half interest in the front parcel, Morgan's redemption price must include one-half of the amount the Bank bid in excess of the lien payment and costs for that parcel. The trial court

also stated that interest on $64,177.34 would continue to run until Morgan tendered a redemption payment.

On September 18, 1989, the trial court entered an order of redemption after Morgan deposited $65,795.92 with the court. Morgan appeals the trial court's set redemption price.

ISSUES

On appeal, Morgan claims the trial court erred in setting the redemption price at $64,177.34 and seeks a determination of the proper amount needed to redeem the front parcel. In addressing these issues we must determine:

(1) when Morgan's right of redemption arose; and

(2) the proper redemption price.

1. *Right of Redemption*

■ *After a judicial sale* of real property, the former owner may redeem the property:

(1) by paying to the purchaser * * * at any time within nine months from the *date of sale,* the amount paid, with interest from the *date of purchase* at the rate of ten percent a year, together with all taxes, interest and penalties thereon, and all payments made to satisfy in whole or in part any prior lien or mortgage not foreclosed, paid by the purchaser, with interest on such taxes, interest, penalties and payments made on liens or mortgages at the rate of ten percent a year from the date of payment; or

· (2) by petitioning the district court in which the judgment or decree of foreclosure was entered for a certificate of redemption and by making a deposit of the amount set forth in Paragraph (1) * * * in cash in the office of the clerk of the district court in which the order, judgment or decree under which the sale was made was entered, at any time within nine months from the date of sale. [Emphasis added.]

NMSA 1978, § 39–5–18(A) (Cum.Supp. 1989).

In determining when Morgan's right of redemption arose we must define the statutory terms "date of sale" and "date of purchase." "Statutes should be construed so as to promote public convenience and to avoid inequity, absurdity, and hardship." *State ex. rel. Bd. of County Comm'rs v. Jones,* 101 N.M. 660, 661, 687 P.2d 95, 96 (1984). "When a statute uses terms of art, we interpret these terms in accordance with case law interpretation or statutory definition of those words, if any." *Buzbee v. Donnelly,* 96 N.M. 692, 700, 634 P.2d 1244, 1252 (1981).

■ The Uniform Commercial Code (UCC) states that a "sale" is accomplished when a seller passes title to a buyer for a price. NMSA 1978, § 55–2–106(1). *See also Valdez v. Garcia,* 79 N.M. 500, 501, 445 P.2d 103, 104 (Ct.App.), *cert. denied,* 79 N.M. 449, 444 P.2d 776 (1968). Under this definition, the "date of sale" is the date the property's title passes to the buyer. "[A] 'purchase' includes taking by sale * * * or any other voluntary transaction creating an interest in property[.]" NMSA 1978, § 55–1–201(32) (Cum.Supp.1989). A "purchase" is complete when the court confirms it and the purchaser receives an interest in the property, *i.e.,* title. *See Speckner v. Riebold,* 86 N.M. 275, 277, 523 P.2d 10, 12 (1974); *Baker v. Murphrey,* 250 N.C. 346, 350, 108 S.E.2d 644, 648 (1959); 59 C.J.S. *Mortgages* § 734(b) (1949). Thus, the "date of purchase" is the date the purchase is completed.

The first sale on April 26, 1986, was invalidated and the property was ordered resold in two separate parcels. In that transaction the Bank *did not* obtain title to the front parcel. Thus, no "sale" or "purchase" occurred. Since a "sale" is a prerequisite to obtaining the right of redemption, that transaction did not give Morgan a right of redemption and she was not subject to interest charges from that date. *See* NMSA 1978, § 39–5–18(A).

The second sale was the only sale completed. The Special Master's Deed was drafted on April 13, 1989, and trial court

confirmed the sale on April 20, 1989. In this case the "date of sale" and "date of purchase" refer to April 20, 1989, the date the trial court confirmed the second sale and the Bank obtained title to the front parcel. Morgan's right of redemption arose on that date.

## 2. *Redemption Price*

■ The trial court held that the proper redemption price consisted of: (1) the amount paid to First Federal; (2) sale costs; (3) one-half of the remaining sale proceeds; and (4) interest on the amount paid to First Federal from the date of the first sale (April 26, 1986) until tender of the redemption price. We disagree with the court's fourth criterion.

Foreclosure proceedings may be simplified by viewing each transaction separately and clearly identifying the parties' capacities. This case has been made unduly complex by the fact that the $39,318.40 the Bank tendered to First Federal in the first sale was not returned when the sale was invalidated. While the Bank's premature payment to First Federal may give rise to separate and distinct rights and liabilities between the parties, that case is not before us.

■ "A bid may be withdrawn at any time before it is accepted * * *." 59 C.J.S. *Mortgages* § 734(b) (1949). A bidder does not receive any right to the property until the sale is confirmed by the court, then a legal "sale" has occurred. *See Speckner v. Riebold*, 86 N.M. 275, 277, 523 P.2d 10, 12 (1974); *Baker v. Murphrey*, 250 N.C. 346, 350, 108 S.E.2d 644, 648 (1959); 59 C.J.S. *Mortgages* § 734(b). Thus, any interest earned on a bid amount belongs to the bidder when the sale is confirmed. Absent a valid sale, the bid and its accrued interest remained the Bank's property and should have been returned when the sale was invalidated.

■ Similarly, the party seeking redemption may withdraw money tendered to the court or the purchaser until the tender is accepted. *See* 59 C.J.S. *Mortgages* § 850(e) (1949). Interest on the purchase price ceases to run when the party seeking redemption validly tenders the redemption price to the purchaser. *See* NMSA 1978, § 39–5–18 (Cum.Supp.1989); *Evensen v. Pubco Petroleum Corp.*, 274 F.2d 866, 873 (10th Cir.1960); 59 C.J.S. *Mortgages* § 850(g) (1949). The party seeking redemption owns any interest accrued on money deposited to redeem the property.

The proceeds from the second sale of the front parcel should have been distributed first to discharge First Federal's mortgage, with the remaining proceeds to be equally divided between the Bank and Morgan. Thus, Morgan and the Bank were each entitled to $12,712.73, as their respective share of the sale proceeds.

Once the foreclosure sale was confirmed, Morgan was entitled to redeem the property by paying the amount the Bank paid, $65,000, less Morgan's share of the sale proceeds, $12,712.73, plus interest from the "date of purchase", April 20, 1989. The fact that Morgan received part of the sale proceeds and used those proceeds to redeem the land sold need not confuse the issue. Similarly, the fact that the Bank was both a purchaser and a mortgagee should not confuse the issue.

The statutory interest rate began to run on the redemption price of $52,287.27 ($65,-000 − $12,712.73) from April 20, 1989, the "date of sale." Morgan could then redeem the property within nine months of that date by paying $52,287.27 plus ten percent annual interest from April 20, 1989, until tender of the redemption price.

## CONCLUSION

We conclude that the trial court improperly calculated the redemption price to include interest on the amount paid to First Federal, from April 26, 1986, until paid. The proper redemption price equals $52,-287.27 plus ten percent annual interest from April 20, 1989, and any taxes, interest or penalties thereon until the date payment

was made, September 18, 1989. We reverse and remand to the trial court for proceedings consistent with this opinion.

IT IS SO ORDERED.

SOSA, C.J., and MONTGOMERY, J., concur.