826 P.2d 962

Robert MARTINEZ, Plaintiff–Appellant,

v.

**YELLOW FREIGHT SYSTEM, INC., Defendant–Appellee.**

No. 19472.

Supreme Court of New Mexico.

Feb. 10, 1992.

Jeff Romero, Albuquerque, for plaintiff-appellant.

John A. Mitchell, Santa Fe, for defendant-appellee.

## OPINION

BACA, Justice.

Plaintiff-appellant Robert Martinez appeals the judgment of the trial court in favor of defendant-appellee Yellow Freight System, Inc. (Yellow Freight). We affirm.

## I. FACTS

On October 3, 1986, appellant was hired by Yellow Freight as a truck driver. Appellant was a probationary employee under the terms of the collective bargaining agreement between Yellow Freight and the union. Under Article 41 of this agreement, a probationary employee is given a thirty day trial employment without any claim to permanent employment.[1] During this thirty day period, a probationary employee may be terminated for any legal reason, without recourse.

At the time of his hiring, appellant was informed that he was required to have a physical examination during his probationary period. He was also informed that a satisfactory physical examination was an occupational qualification of permanent employment with Yellow Freight. In addition, appellant was required to pass written and driving tests to demonstrate his qualifications as a truck driver.

During the probationary period, appellant made approximately twenty-two trips for Yellow Freight. After he returned from his last trip on October 29, appellant was asked to report to Dr. Saltz for an employment physical examination. As a part of this examination, Saltz took a series of x-rays of appellant's back. On the same day, Saltz reported to Yellow Freight that these x-rays indicated that appellant had a back abnormality that would preclude his employment as a truck driver. On October 30, appellant was discharged by Yellow Freight. The only reason given for the termination was that it was pursuant to Article 41 of the collective bargaining agreement.

Shortly thereafter, appellant was examined by Dr. Goodwin, who found that appellant did not have a back abnormality. In an attempt to persuade Yellow Freight to overrule its termination decision, appellant tried to bring this information to the attention of Yellow Freight's terminal manager, Mr. Yeaman. When Yeaman refused to consider this information and reinstate him, appellant filed a complaint with the New Mexico Human Rights Commission. This complaint alleged that Yellow Freight terminated appellant in violation of the New Mexico Human Rights Act. *See* NMSA 1978, Sections 28–1–1 to –14 (Repl.Pamp.1991).[2] The Human Rights Commission found that appellant's dismissal did not violate the New Mexico Human Rights Act.

---

1. The portion of Article 41 relevant to this case reads as follows:
   **Probationary Employees**
   (a) A new employee shall work under the provisions of this Agreement but shall be employed only on a thirty-day trial basis with the individual Employer, during which period he may be discharged without further recourse; provided, however, that the Employer may not discharge or discipline for the purpose of evading this Agreement or discriminating against Union members. After thirty days the employee shall be placed on a regular seniority list.

2. The briefs of the parties are unclear as to whether this case was tried under the 1983 or 1987 version of the Human Rights Act. However, for the purposes of this appeal, the relevant portions of these statutes are identical to the 1991 version. Compare NMSA 1978, §§ 28–1–1 to –14 (1983 Repl.Pamp.), *with* NMSA 1978, §§ 28–1–1 to –14 (1987 Repl.Pamp.), *and* NMSA 1978, §§ 28–1–1 to –14 (1991 Repl.Pamp.). Therefore, for consistency and clarity, we will cite only the 1991 statute.

Appellant appealed the Human Rights Commission's decision to the district court and the case was tried to the court without a jury. At trial, appellant's theory was that he was terminated, at least in part, because Yellow Freight perceived that he was handicapped. The trial court concluded that appellant was not terminated because of an actual or perceived handicap and that Yellow Freight did not engage in any discriminatory practice in its hiring and termination of appellant. This appeal followed.

## II. DISCUSSION

Appellant contends that the trial court erred because it failed to apply the test as set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to the facts of this case. Appellant also contends that the trial court erred when it found that Yellow Freight had not terminated him, at least in part, because of a perceived handicap and when it found that Yellow Freight had articulated a legitimate, nondiscriminatory reason for appellant's termination. Appellant urges us to reverse the court below and remand this action for a determination of damages.

A. Did the trial court err in failing to apply the *McDonnell Douglas* framework to the instant case?

In *Smith v. FDC Corp.*, 109 N.M. 514, 787 P.2d 433 (1990), we used the evidentiary methodology developed in *McDonnell Douglas*, 411 U.S. at 802–05, 93 S.Ct. at 1824–26, to provide guidance in interpreting the New Mexico Human Rights Act.[3] Under the framework adopted in *Smith*, the plaintiff in an employment discrimination case must establish a prima facie case of discrimination. *Smith*, 109 N.M. at 518, 787 P.2d at 437. The plaintiff meets this burden if he or she shows (1) that he or she is a member of a protected class;[4] (2) that he or she was qualified to continue employment; (3) that his or her employment was terminated; and (4) that his or her position was filled by someone not in the protected class. *Smith*, 109 N.M. at 518, 787 P.2d at 437. If the plaintiff is successful in establishing a prima facie case of discrimination, the burden " 'shifts to the employer to articulate some legitimate, nondiscriminatory reason' " for the employment decision. *Id.* at 517 n. 1, 787 P.2d at 436 n. 1 (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824). If the defendant articulates a nondiscriminatory reason for the termination, the plaintiff has the opportunity to show that the articulated reason was merely a pretext for a discriminatory action. *Id.* The burden of showing that the employer's actions were a pretext merges with the plaintiff's ultimate burden of proving a discriminatory employment practice. *Id.* (citing *Texas Dep't of Community Affairs v. Burdine*,

3. Because the Federal Civil Rights Act of 1964, 42 U.S.C.A. § 2000e–2 (West 1981), is worded similarly to the New Mexico Human Rights Act, NMSA 1978, § 28–1–7 (1991 Repl.Pamp.), we cite federal precedent for guidance. *Smith*, 109 N.M. at 517, 787 P.2d at 436.

Our reliance on the methodology developed in the federal courts, however, should not be interpreted as an indication that we have adopted federal law as our own. Our analysis of this claim is based on New Mexico statute and our interpretation of our legislature's intent, and, by this opinion, we are not binding New Mexico law to interpretations made by the federal courts of the federal statute. *Id.; see also Lowery v. Atterbury*, —— N.M. ——, ——, 823 P.2d 313, —— (1992) (federal cases regarding dismissal under Fed.R.Civ.P. 41(b) are persuasive, but not binding, authority when considering dismissal under similarly worded New Mexico rule, SCRA 1986, 1–041(B)).

4. The New Mexico Human Rights Act prohibits discrimination based on a physical handicap, as well as discrimination based on "race, age, religion, color, national origin, ancestry, sex, * * * mental handicap or medical condition." NMSA 1978, § 28–1–7(A) (1991 Repl.Pamp.).

The Act defines a physical handicap as a "physical * * * impairment that substantially limits one or more of an individual's major life activities. An individual is also considered to be physically * * * handicapped if he * * * is regarded as having a physical * * * handicap." NMSA 1978, § 28–1–2(M) (1991 Repl.Pamp.).

"Major life activities" are defined as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." NMSA 1978, § 28–1–2(N) (1991 Repl.Pamp.).

450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)).

■ Our opinion in *Smith* rejected the idea that the *McDonnell Douglas* framework was the only method of proving employment discrimination. As we stated in *Smith,*

> [t]his framework, however, is not a required method of proof; it is only a tool to focus the issues and to reach the ultimate issue of whether the employer's actions were motivated by impermissible discrimination.
>
> * * * A prima facie case may also be made out through other means; not all factual situations will fit into any one type of analysis, although unlawful discrimination may nevertheless be present * * *. [T]he entire *McDonnell Douglas* framework may be bypassed through a showing of intentional discrimination; the purpose of the test is to allow discriminated-against plaintiffs, in the *absence* of direct proof of discrimination, to demonstrate an employer's discriminatory motives * * *. [I]f a plaintiff * * * can show through direct evidence that he was discriminated against because of an impermissible categorization, that is all that is required for him to prevail.

109 N.M. at 518, 787 P.2d at 437 (citations omitted). Thus, in *Smith* we approved of at least two possible methods of proving employment discrimination—direct proof of a discriminatory motive or indirect proof of a discriminatory motive under the *McDon-*

*nell Douglas* framework.[5] In the instant case, the trial court did not explicitly apply the *McDonnell Douglas* framework as adopted in *Smith.* However, as our discussion below demonstrates, the trial court's findings are consistent with a proper application of the *McDonnell Douglas/Smith* employment discrimination framework. Thus, appellant's first contention is groundless.

B. Does the record contain substantial evidence to support the findings of the trial court?

■ Appellant next contends that the trial court erred because the record does not contain substantial evidence to support the findings of the trial court. Appellant specifically attacks the trial court's findings that (1) Yellow Freight did not consider appellant as having a handicap; and (2) Yellow Freight had a legitimate, nondiscriminatory reason for firing appellant.[6] In regard to these findings, appellant contends that he established a prima facie case of discrimination and that Yellow Freight failed to articulate a legitimate nondiscriminatory reason for terminating him. Thus, appellant asks us to reverse the trial court and remand this action for a determination of damages.

■ In the instant case, to establish a prima facie case of discrimination, appellant would have to demonstrate (1) that he was a member of a protected class, i.e., those persons having or being perceived as

---

5. In *Smith,* we also recognized that proof sufficient to satisfy each element of the *McDonnell Douglas* framework could vary with the particular facts of the case.

   For example, a prima facie case can be shown absent a demonstration that the plaintiff was replaced by someone not in the protected class if he can show that he was dismissed purportedly for misconduct nearly identical to that engaged in by one outside of the protected class who was nonetheless retained. *Smith,* 109 N.M. at 518, 787 P.2d at 437 (citing *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 282–84, 96 S.Ct. 2574, 2579–81, 49 L.Ed.2d 493 (1976); *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1185–86 (11th Cir. 1984)).

6. Appellant attacks the trial court's Finding Nos. 5 and 7. These findings are worded as follows:

5. On October 30, 1986, Yeaman terminated [appellant] pursuant to Yellow Freight policies as a terminal rejection [under Article 41 of the collective bargaining agreement] because he determined that in his opinion

   a. [appellant] was not the type of person who should be made a permanent employee. This determination was made after consultation with his dispatchers.

   b. [appellant] had not been candid regarding his credit history.

   c. [appellant] had been indifferent toward taking a timely physical.

   *       *       *       *       *       *

7. At no time did Yellow Freight consider [appellant] as having a physical impairment that substantially limited major life activities.

having a handicap;[7] (2) that he was qualified to continue employment as a truck driver; (3) that his employment was terminated by Yellow Freight; and (4) that Yellow Freight continued to need truck drivers after appellant was discharged. *See Smith,* 109 N.M. at 518, 787 P.2d at 437.[8] Evidence in the record shows that appellant was terminated only after his employment physical examination showed a disabling back condition. The results of this examination were received by Yellow Freight's manager on the day before appellant was terminated. This evidence raises the inference that he was perceived to have a handicap and fired, at least in part, because of this perception.[9] Appellant also demonstrated that he was qualified to be a truck driver by introducing evidence that he passed written and driving tests required by Yellow Freight.[10] In addition, there is no question that Yellow Freight continued to need qualified drivers after appellant

was discharged. Thus, appellant met his initial burden of proof and established a prima facie case of discrimination.[11]

■ Appellant's prima facie case of discrimination created a rebuttable presumption that Yellow Freight impermissibly discriminated against him. *See Smith,* 109 N.M. at 518, 787 P.2d at 437; *see also Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. Yellow Freight could rebut this presumption by "articulat[ing] some legitimate nondiscriminatory reason" for discharging appellant. *Smith,* 109 N.M. at 517 n. 1, 787 P.2d at 436 n. 1 (citing *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94). Yellow Freight introduced evidence that appellant was dilatory in taking his employment physical examination, that appellant was slow in completing his paperwork, and that appellant was not candid in answering questions on his employment application.[12]

**7.** While our opinion in *Smith* concerned age and race discrimination, the same analysis is applicable to the instant case because the Human Rights Act also protects handicapped individuals and those individuals perceived to be handicapped against discrimination. NMSA 1978, §§ 28–1–7(A), 28–1–2(M) (Repl.Pamp.1991).

**8.** The elements of the *Smith* test are flexible to meet the facts of a particular case. *See Smith,* 109 N.M. at 518, 787 P.2d at 437. A slightly different formulation of the fourth element was used in *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824, and that formulation, as enunciated above, fits the facts of the instant case.

**9.** Appellant also contends that Yeaman admitted in his testimony that appellant was fired at least in part because of a perceived handicap. Appellant cites *Turner v. Silver,* 92 N.M. 313, 316, 587 P.2d 966, 969 (Ct.App.), *cert. denied,* 92 N.M. 260, 586 P.2d 1089 (1978), for the proposition that "[a]dmissions made by a party are the strongest kind of evidence. Such admissions are binding and conclusive [against the party] if uncontradicted and unexplained. *Hiniger v. Judy,* 194 Kan. 155, 398 P.2d 305 (1965)." Based on *Turner,* appellant argues that Yeaman's testimony is conclusive evidence of discrimination based on a perceived handicap.

However, the court of appeals has repudiated *Turner.* As the court of appeals later explained, *Turner v. Silver* * * * expresses only the opinion of its author, Judge Sutin; other members of the panel did not join in Judge Sutin's opinion. Thus, with respect to the effect of admissions, *Turner* is not a decision of the Court of Appeals. *Casias v. Zia Co.,* 94 N.M.

723, 616 P.2d 436 (Ct.App.1980). Judge Sutin's opinion is based on a Kansas decision. We apply New Mexico law. An admission in pleadings, or in testimony, is sufficient to support a finding. *Feldhut v. Latham,* 60 N.M. 87, 287 P.2d 615 (1955); *Lujan v. Gonzales,* 84 N.M. 229, 501 P.2d 673 (Ct.App.), *cert. denied,* 84 N.M. 219, 501 P.2d 663 (1972). However, an admission "is by no means conclusive * * *. [T]he admission is only one factor to be considered together with the other evidence." *Michael v. Bauman,* 76 N.M. 225, 413 P.2d 888 (1966). See also *Albright v. Albright,* 21 N.M. 606, 157 P. 662 (1916). *Southern Union Exploration Co. v. Wynn Exploration Co.,* 95 N.M. 594, 598, 624 P.2d 536, 540 (Ct.App.), *cert. denied,* 95 N.M. 593, 624 P.2d 535 (1981), *cert. denied,* 455 U.S. 920, 102 S.Ct. 1276, 71 L.Ed.2d 461 (1982). Thus, appellant's arguments to the contrary must fail.

**10.** Because we find that the record contains substantial evidence to support the trial court's finding that appellant was not terminated because of a perceived handicap, we need not reach the issue of whether appellant was physically qualified to continue in his employment with Yellow Freight.

**11.** We note here, as other courts have stated, that the burden of establishing a prima facie case of discrimination is not onerous. *See, e.g., Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94.

**12.** As appellant contends, to rebut his prima facie case Yellow Freight must articulate a legitimate nondiscriminatory reason for the termination through "some admissible evidence."

This evidence raised the inference that the Yellow Freight management team felt that appellant demonstrated a poor attitude towards his employment and would have been a difficult employee. Thus, Yellow Freight articulated a legitimate, nondiscriminatory reason for terminating appellant, thereby rebutting the presumption that its actions were based on impermissible discrimination.

Because evidence was presented that rebutted the presumption of discrimination, appellant, to prevail on his claim, would have had to have presented evidence that the articulated reason was pretextual. *See Smith*, 109 N.M. at 519, 787 P.2d at 438; *see also McDonnell Douglas*, 411 U.S. at 804–05, 93 S.Ct. at 1825–26. Appellant's burden of showing that the articulated reason was merely a pretext merges with his ultimate burden of proof of intentional discrimination. *See Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. In the instant case, the trial court made two findings relevant to the appellant's ultimate burden of proof: (1) that Yellow Freight did not perceive appellant to be handicapped; and (2) that Yellow Freight had a legitimate, nondiscriminatory reason for discharging appellant. Thus, the only remaining issue in this appeal is whether these findings are supported by substantial evidence. Because we find that the first finding is supported by substantial evidence, we need not examine the second finding.

Substantial evidence is any relevant evidence in the record that " 'a reasonable mind might accept as adequate to support a conclusion.' " *Smith*, 109 N.M. at 519, 787 P.2d at 438 (quoting *Toltec Int'l, Inc. v. Village of Ruidoso*, 95 N.M. 82, 84, 619 P.2d 186, 188 (1980)). In reviewing the record to determine whether substantial evidence supports a trial court's finding, "[w]e resolve disputed facts in favor of the party prevailing below, indulging all reasonable inferences in favor of the verdict

and disregarding contrary inferences, and we do not independently weigh conflicting evidence." *Id.*

In light of the above standard of review, we find that the record contains substantial evidence to support the trial court's finding that Yellow Freight did not perceive appellant to be handicapped. Mr. Robert Yeaman, Tucumcari terminal manager for Yellow Freight, testified on direct and cross-examination that appellant's firing was pursuant to Article 41 of the collective bargaining agreement and not due to a perceived handicap. Yeaman also testified that Yellow Freight's policies would preclude him from discharging appellant for failure to pass a physical. According to Yeaman's testimony, such a decision would have to come from Yellow Freight's Kansas City office. Mr. Bruce Daly, a dispatcher for Yellow Freight, testified that he recommended that Yellow Freight terminate appellant before the end of the probationary period. At the time that Daly made this recommendation, he was unaware of Dr. Saltz's report regarding appellant's back. Although conflicting evidence was presented at trial, the trial court apparently believed the testimony of Yeaman and Daly.

On appeal, this Court will not weigh conflicting evidence or determine the credibility of witnesses, *Forrest Currell Lumber Co. v. Thomas*, 81 N.M. 161, 163, 464 P.2d 891, 893 (1970), nor is it significant that there is evidence that supports appellant's view of the case. *McCauley v. Tom McCauley & Son, Inc.*, 104 N.M. 523, 527, 724 P.2d 232, 236 (Ct.App.1986). After a review of the evidence presented, we have determined that a reasonable mind could have found that Yellow Freight did not terminate appellant based on a perceived handicap. Because appellant failed to meet his ultimate burden of proof of discrimina-

*Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094–96. Appellant complains that much of the testimony establishing these facts was hearsay and thus inadmissible. However, appellant failed to raise a timely objection to this testimony at trial and is therefore considered to have waived such

objection. *See* SCRA 1986, 11–103(A)(1); *State v. Young*, 103 N.M. 313, 320, 706 P.2d 855, 862 (Ct.App.1985) (failure to object to unresponsive answer constitutes waiver); 1 John H. Wigmore, *Evidence* § 18 (Tillers rev. 1983) ("A rule of evidence not invoked is waived.").

tion, the decision of the district court is AFFIRMED.

IT IS SO ORDERED.

RANSOM, C.J., and FRANCHINI, J., concur.