895 P.2d 265

**WESTERN BANK OF LAS CRUCES, Plaintiff,**

**Jose Frietze, Plaintiff-in-Redemption/Appellee,**

v.

**Georgette MALOOLY, Defendant/Appellant.**

**No. 15637.**

Court of Appeals of New Mexico.

April 19, 1995.

Neil E. Weinbrenner, Weinbrenner, Richards, Paulowsky & Ramirez, P.A., Las Cruces, for plaintiff-in-redemption/appellee.

Norman E. Todd, Las Cruces, for defendant/appellant.

## OPINION

MINZNER, Justice, Sitting by Designation.

This case arises from a mortgage foreclosure action. Appellant Georgette Malooly (Malooly) and Appellee Jose Frietze (Frietze) both held junior liens against the foreclosed

property. After foreclosure and sale of the property, Malooly and Frietze both attempted to redeem it pursuant to NMSA 1978, Section 39–5–18 (Repl.Pamp.1991). This appeal raises three issues: (1) whether our redemption statute permits redemption by the assignee of a junior lienholder; (2) whether Malooly has a superior right of redemption over Frietze by virtue of her status as judicial sale purchaser; and (3) whether the trial court erred in computing the dollar amount required for redemption. We affirm on Issues 1 and 2 and remand for a hearing on Issue 3.

## FACTS

The facts of this case are generally undisputed. Mortgagee Western Bank of Las Cruces (Western Bank) filed a foreclosure action against mortgagor La Ventana Building Corporation (La Ventana) and numerous junior lienholders. On Feb. 5, 1993, the trial court entered a "Stipulated Judgment, Partial Default Judgment, Decree of Foreclosure, Order of Sale and Appointment of Special Master." The trial court's order specified that the post-foreclosure redemption period would be one month in lieu of the statutory period of nine months. This shorter redemption period reflected the original mortgage agreement between Western Bank and La Ventana. *See Sun Country Sav. Bank v. McDowell,* 108 N.M. 528, 533, 775 P.2d 730, 735 (1989).

The special master held a judicial sale of the disputed property on March 11, 1993. Malooly, a junior lienholder who had been named as a defendant in Western Bank's foreclosure suit, submitted the winning bid of $68,442. The trial court confirmed the sale to Malooly on March 25, 1993. On April 9, 1993, fifteen days into the redemption period, Frietze petitioned the trial court to redeem the property from Malooly pursuant to the provisions of Section 39–5–18. Frietze had acquired his lien against the foreclosed property in an assignment from Rawson, Inc., a creditor of the mortgagor corporation. Along with his petition to redeem, Frietze tendered to the court the sum of $69,004.54, which represented Malooly's judicial sale purchase price plus interest at the statutory rate of ten percent for thirty days.

Malooly opposed Frietze's petition and filed her own counter-petition for redemption on May 10, 1993, two weeks after the expiration of the thirty-day statutory redemption period. Malooly then moved to dismiss Frietze's petition, and Frietze moved for summary judgment. The trial court contemporaneously heard the motion to dismiss and the motion for summary judgment and granted summary judgment in favor of Frietze. During the period between her purchase of the property at the judicial sale and the trial court's ruling that Frietze's redemption was valid, Malooly had leased the property and received $2,000 in rental proceeds; the trial court did not make a ruling on which party was entitled to those proceeds. Both parties discuss the rental proceeds issue in their respective briefs. *See* SCRA 1986, 12–201(C) (Repl.Pamp.1992) (review without cross-appeal).

## REDEMPTION BY THE ASSIGNEE

Malooly argues that, as the assignee of a junior lienholder, Frietze was not entitled to redeem the property. Specifically, she contends that Section 39–5–18 does not allow for the assignment of a junior lienholder's right of redemption.

Section 39–5–18(A) provides that "real estate may be redeemed by the former defendant owner of the real estate, his heirs, personal representatives or assigns or by any junior mortgagee or other junior lienholder." Malooly suggests that the placement of the phrase "or his assigns" after "former defendant owner," but not after "any junior lienholder," evinces a legislative intent to prohibit the assigns of junior lienholders from redeeming.

For the reasons outlined below, we believe that Malooly's reading of the statute is too narrow. First, as Frietze points out, the term "lien*holders*" is a generic term that refers to anyone who holds the lien. The prevailing rule of statutory construction requires that words of a statute "be given their ordinary, everyday meaning, and in the absence of a clear and express legislative intention to the contrary, the language of the statute is conclusive." *State ex rel. Reynolds v. Aamodt,* 111 N.M. 4, 5, 800 P.2d 1061, 1062

(1990). Therefore, Frietze was a "lienholder" within the ordinary meaning of the statute, despite obtaining his lien by assignment.

Second, while New Mexico appellate courts have not directly addressed the issue of whether our statute permits redemption by the assignee of a junior lienholder, two Supreme Court opinions suggest that the practicing bar has recognized or assumed the validity of such a redemption. In *Leonard Farms v. Carlsbad Riverside Terrace Apartments, Inc.,* 86 N.M. 241, 242, 522 P.2d 576, 577 (1974), the Supreme Court's summary of the proceedings below stated that "a judgment creditor of Carlsbad assigned its judgment (and therefore its redemption rights) to Clovis National Bank, who in turn assigned the judgment to ... Investor Properties, Inc. (appellee)." *See Crown Life Ins. Co. v. Candlewood, Ltd.,* 112 N.M. 633, 634, 818 P.2d 411, 412 (1991) (redemptioner acquired redemption rights of mortgagor and lienholder through assignment).

■ Finally, we note that the statutory redemption schemes of other states "generally allow transfer of the right of redemption ... by assignment." 3 Richard R. Powell, *Powell on Real Property* ¶ 470, at 37–365 (Patrick J. Rohan rev. ed. 1994). Malooly cites to no statute in any state, nor are we aware of one, that permits redemption by a junior lienholder but not by his or her assignee. Indeed, we are unable to discern what legislative purpose such a statutory provision might further. We therefore hold that our redemption statute authorizes a holder-by-assignment of a junior lien to redeem from the judicial sale of foreclosed property.

■ In her brief-in-chief, Malooly also contends that it is a violation of public policy to allow a mortgagor to redeem foreclosed property through a junior lien assignment. Malooly's assertion presupposes that Frietze is identified with the mortgagor, La Ventana, in the capacity of a shareholder, officer, and director. However, Malooly's brief does not indicate that she raised the issue of Frietze's alleged identity as a mortgagor with the trial court. Nor does her brief indicate that she raised below the specific argument that she now asserts. Our review of the record fails to show that this issue was preserved below, and thus we need not address it on appeal. *See Woolwine v. Furr's, Inc.,* 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987) (arguments not presented to the trial court will not be considered on appeal).

## REDEMPTION RIGHT OF JUDICIAL SALE PURCHASER

Malooly next argues that, even if our statute does permit Frietze to redeem, Frietze lost that right when Malooly, as a junior lienholder, purchased the property at the foreclosure sale. The essence of her argument is that she redeemed the property from herself and that only one redemption is permissible after a foreclosure sale. The contentions of the parties on this issue require us to examine (1) whether, as Frietze contends, Malooly's interests as judicial sale purchaser and junior lienholder merged and thereby destroyed her power to redeem; (2) whether, as Malooly counters, those interests merged and thereby effected a redemption by Malooly from herself; and (3) whether Malooly in fact redeemed from herself.

New Mexico law provides for two methods of redemption:

A. After sale of any real estate pursuant to any such judgment or decree of any court, the real estate may be redeemed by the former defendant owner of the real estate, his heirs, personal representatives or assigns or by any junior mortgagee or other junior lienholder:

(1) by paying to the purchaser, his personal representatives or assigns, at any time within nine months from the date of sale, the amount paid, with interest from the date of purchase at the rate of ten percent a year, together with all taxes, interest and penalties thereon, and all payments made to satisfy in whole or in part any prior lien or mortgage not foreclosed, paid by the purchaser, with interest on such taxes, interest, penalties and payments made on liens or mortgages at the rate of ten percent a year from the date of payment; or

(2) by petitioning the district court in which the judgment or decree of foreclosure was entered for a certificate of

redemption and by making a deposit of the amount set forth in Paragraph (1) of this subsection in cash in the office of the clerk of the district court in which the order, judgment or decree under which the sale was made was entered, at any time within nine months from the date of sale.

Section 39–5–18.

### A. Merger

■ The trial court determined that Malooly did not validly exercise her right of redemption and that her right merged into the title conveyed to her by the deed from the special master. We first address the question of merger. Because the issue of whether a junior lienholder's redemption interest merges with the property interest she acquires at a judicial sale is a question of law, we review the trial court's ruling under a de novo standard. *See Duncan v. Kerby,* 115 N.M. 344, 347–48, 851 P.2d 466, 469–70 (1993).

■ In New Mexico, the application of the doctrine of merger is not favored unless it is necessary to prevent injustice. In *Tri–Bullion Corp. v. American Smelting & Refining Co.,* 58 N.M. 787, 792, 277 P.2d 293, 296 (1954), the Supreme Court recognized that under common law, "when the same party becomes the owner of both a large and a small estate in the same property, they merge and the smaller estate becomes extinct." However, the *Tri–Bullion* Court further stated that mergers are not favored in law or equity, and thus indicated that courts should not apply the doctrine of merger rigidly and mechanically as it was applied at common law. *Id.* at 794–95, 277 P.2d at 298; *see also Trustees of Conquistador Council Boy Scouts Trust Fund v. International Minerals & Chem. Corp.,* 91 N.M. 55, 57, 570 P.2d 593, 595 (1977) (" '[C]ourts will not compel a merger of estates where the party in whom the two interests are vested does not intend such a merger to take place, or where it would be inimical to the interest of the party in whom the several estates have united....' " (quoting *Mobley v. Harkins,* 14 Wash.2d 276, 128 P.2d 289, 291 (1942))).

In the instant case, Frietze argues that the trial court correctly applied the merger doc-

trine because Malooly's interest in the property that derived from her status as junior lienholder merged into and was destroyed by her interest in the property that derived from her status as judicial sale purchaser. Thus, Frietze argues, Malooly had no right to redeem from herself.

■ However, there is no evidence that Malooly intended that her redemption interest should merge with her fee interest. Furthermore, under these circumstances, merger would be inimical to Malooly's interests because it would destroy her right to redeem. In any event, we need not consider the merits of Frietze's argument. Even if Malooly had a right to redeem from herself, *see Continental Mut. Life Ins. Co. v. King,* 72 Minn. 287, 75 N.W. 376, 378 (1898) (holding, under a different redemption statute, that merger did not prevent purchaser from redeeming from himself as creditor); *cf. First Fed. Sav. & Loan Ass'n v. Nath,* 839 P.2d 1336, 1340–41 (Okla.1992) (mortgage lien did not merge into legal title acquired at foreclosure sale), Malooly did not exercise that right.

■ Before beginning our discussion of whether Malooly actually exercised her right of redemption, we address her suggestion that the merger doctrine supports her position as well, in that her redemption interest in the property "merged" with her fee interest in the property. Thus, she reasons, her right of redemption "is vested and completed." In other words, she is contending that under the merger doctrine, her purchase at the judicial sale effectuated the exercise of her statutory right of redemption, thereby cutting off the rights of any other persons to statutory redemption because the statute allows for only one redemption. Malooly's reliance on the merger doctrine is misplaced. Contrary to Malooly's assertion, the merger doctrine does not provide for any enhanced property interest. Rather, the doctrine serves to destroy the lesser estate. *See Trustees of Conquistador Council Boy Scouts Trust Fund,* 91 N.M. at 56, 570 P.2d at 594.

Malooly cites no authority to support her theory that the right of redemption that she acquired as a junior lienholder was enhanced

by her status as judicial sale purchaser. We perceive the right of redemption to be quite distinct from the property right that a winning bidder acquires at a judicial sale. We do not agree that, because these rights vested simultaneously in the same person, the right of redemption was thereby enhanced. The right of redemption was neither increased nor diminished. *Cf. Fonde v. Lins,* 259 Ala. 553, 67 So.2d 834, 835–36 (1953) (holding that, under the Alabama redemption statute, a junior lienholder's purchase at the judicial sale in no way abrogated a mortgagor's statutory right to redeem).

We disagree with Malooly that it would be inequitable or against public policy to permit Frietze, as against her, to redeem the foreclosed property. Malooly argues that she took the initiative to bid at the judicial sale, whereas Frietze merely seeks to reap a windfall. Malooly bought the property with the actual or implied knowledge that it was subject to redemption. *See Lobsenz v. Micucci Holdings, Inc.,* 127 N.J.Super. 50, 316 A.2d 59, 61 (App.Div.1974) (purchaser at foreclosure sale bids and buys with actual or implied knowledge of the existence of the right to redeem and with full awareness that purchase is subject to being defeated by timely exercise of a redemption right). Section 39–5–18 establishes a public policy in favor of permitting redemption from the purchaser at the judicial sale; to prevent redemption that is in accordance with the statute would be contrary to legislative policy. Thus, we cannot agree with Malooly that considerations of public policy support her argument that Frietze should not be allowed to redeem from her.

Insofar as Malooly contends that between two junior lienholders with competing rights of redemption any "tie" should go to the individual who bid at the judicial sale, we reject such a contention. As revealed by our discussion below, there was no "tie" here; Frietze redeemed and Malooly did not. Moreover, Malooly cites no authority, nor have we found any, to support her assertion that a tie should go to the bidder. *See In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (issues unsupported by cited authority will not be reviewed on appeal).

**B.** ***Malooly's Purported Redemption from Herself***

Malooly alternatively argues that she redeemed the property from herself prior to Frietze's redemption from her. Thus, she argues, her self-redemption foreclosed Frietze's redemption. Malooly implicitly assumes that Frietze's redemption is precluded because the New Mexico redemption statute permits only one redemption.

Our redemption statute is silent as to whether more than one party may seek to redeem during the redemption period. Some other jurisdictions that have adopted statutes similar to our statute contain specific provisions for subsequent redemptions. *See, e.g.,* Idaho Code § 11–403 (1990); Wash.Rev.Code §§ 6.23.040, 6.23.070 (1994). In other jurisdictions courts have interpreted the statutory right of redemption as not permitting subsequent redemptions by junior lienholders. *Allison v. Cody,* 206 Ala. 88, 89 So. 238 (1921); *Feldman v. M.J. Assocs.,* 117 Mich.App. 770, 324 N.W.2d 496, 498 (1982). *Cf.* Powell, *supra,* ¶ 470, at 37–364 (describing redemption procedures in other jurisdictions for subsequent redeeming parties). As the facts of this case suggest, multiple redemptions pose difficulties that legislation could obviate. Nevertheless, we need not reach that question in the instant case because we hold that Malooly never redeemed the foreclosed property from herself.

The trial court found that Malooly took no action to redeem the property until she filed her "Counter–Petition for Redemption" on May 10, 1993. *See Martinez v. Yellow Freight Sys., Inc.,* 113 N.M. 366, 371, 826 P.2d 962, 967 (1992) (on appeal, trial court's findings will be upheld if findings are supported by substantial evidence). The record supports the trial court's finding. Specifically, Malooly never filed a notice of redemption. NMSA 1978, Section 39–5–23 (Repl.Pamp.1991) provides:

In all cases of redemption of lands from sale under the terms and provisions of this act [39–5–17 to 39–5–23 NMSA 1978], it shall be the duty of the purchaser, his personal representatives or assigns, or the

clerk of the district court, as the case may be, to make out an instrument in writing ... evidencing such redemption, which shall be recorded in the office of the county clerk. . . .

■ The plain language of the statute indicates that one of its purposes is to provide notice to potential redemptioners that a redemption has occurred. *Cf. Salsbery v. Ritter*, 48 Cal.2d 1, 306 P.2d 897, 903–04 (1957) (en banc) (concluding that one purpose behind a similar statute is to "diminish[ ] the possibility that a subsequent redemptioner will make payment to some person who because of an undisclosed intervening redemption no longer has any interest in the property"). Malooly asserts that she was not required to file any notice of redemption because Section 39–5–18(A)(1) provides for an extra-judicial redemption procedure. We reject this contention. According to its plain language, Section 39–5–23 applies to *"all cases of redemption* of lands from sale under the terms and provisions of this act," which would include an extra-judicial redemption. (Emphasis added.) Malooly does not assert, nor is there any evidence in the record to indicate, that she complied with Section 39–5–23.

Moreover, Malooly's counter-petition for redemption is untimely. Malooly filed her counter-petition one month after Frietze filed his petition and two weeks after the end of the statutory redemption period. Therefore, the evidence in the record adequately supports the trial court's finding that Malooly did not timely redeem from herself.

### REDEMPTION AMOUNT

■ Malooly finally asserts that the trial court erred by not holding a hearing on the redemption amount as required by statute. Malooly contends that she is entitled to receive not only the amount of her winning judicial sale bid plus interest to the date of redemption, but also interest on the bid amount to the date of the final hearing on Frietze's motion to redeem, reimbursement for property taxes and irrigation district assessments, and reimbursement for insurance premiums. We agree that the trial court erred by not holding a hearing to determine "the amount of money necessary for the re-

demption" in violation of the mandatory language contained in Section 39–5–18(D), and we remand with instructions to hold such a hearing. We briefly address the specific issues Malooly and Frietze raise on appeal regarding the additional sums she seeks.

■ Malooly argues that she is entitled to additional interest. A period of 229 days elapsed between the date of the judicial sale (March 11, 1993) and the date that the trial court ruled that Frietze was entitled to redeem (Oct. 26, 1993). She contends she is entitled to additional interest for that period. We agree.

■ Frietze contends that Section 39–5–18(A)(1) encompasses only taxes, interest, and penalties paid prior to the date of redemption. "Otherwise, it would be impossible to determine the amount to be tendered into Court under the statute." [A.B. 19] In *Morgan v. Texas American Bank/Levelland*, 110 N.M. 184, 187, 793 P.2d 1337, 1340 (1990), however, the Supreme Court held that "[i]nterest on the purchase price ceases to run when the party seeking redemption validly tenders the redemption price to the purchaser." That language is consistent with the requirement that the court fix the amount of the redemption price, and thus *Morgan* indicates that the purchaser should tender the sum awarded by the court, together with interest calculated to the date of the award. *Cf. Leonard Farms*, 86 N.M. at 243, 522 P.2d at 578 (affirming trial court's award of interest calculated to the date of a determination that a proper tender had been made in good faith). We note that Section 39–5–18(A) lists debts that ordinarily can be calculated prior to payment. We see no reason why the right of redemption may not be asserted by tendering a sum calculated to the date of tender, even if the trial court subsequently determines additional sums are due. *Id.* at 244, 522 P.2d at 579 (recognizing court's authority to make a determination of additional amounts due upon request).

■ Frietze also contends that Malooly is not entitled to interest for the entire period of 229 days because her actions caused the delay. On the facts of this case, however, we conclude that Malooly raised a valid problem

in statutory interpretation. Thus, we cannot say that her actions, rather than a lack of clarity in the statute, caused the delay. Further, Frietze did not tender the full amount due Malooly.

■ Malooly sought reimbursement for $298.30 worth of taxes and irrigation assessments that she paid subsequent to the special master's sale. A junior lienholder may redeem from the purchaser by depositing the amounts set forth in the statute, including taxes "paid" by the purchaser. *See* § 39–5–18(A)(1), (2). We conclude that Malooly was entitled to the taxes she paid. We also conclude that on the facts of this case, she was entitled to interest for the additional 229 days.

■ We note that Malooly contends she is entitled to retain the rental proceeds under Section 39–5–22, which provides that the purchaser "shall not be responsible for rents and profits, but shall account only for waste." We agree that the statute protects her right to retain rentals received prior to the date of the award.

■ Malooly also paid insurance premiums of $304 after she purchased the disputed property at the judicial sale. She contends that Frietze should be required to reimburse her for these premiums because "[t]he cost of providing insurance on the real property is a necessary and proper expense." Malooly's assertion that she is entitled to reimbursement for the insurance proceeds as a matter of right is without merit. *See* § 39–5–18(A)(1); *Construction Eng'g & Mfg. Co. v. Don Adams Mining Co.*, 91 N.M. 238, 239, 572 P.2d 1246, 1247 (1977) (redemptioner only required to pay purchase price plus taxes, interest and penalties). However, in *Leonard Farms* the Supreme Court required the redeemer to be responsible for a senior lien not then protected by statute. We conclude that the trial court may award all or part of the sum paid by Malooly for insurance if in its discretion it determines the payments were necessary to preserve the property to protect Frietze's interest, rather than Malooly's interest as a landlord, and that reimbursement would prevent unjust enrichment.

## CONCLUSION

We affirm on the first two issues raised by Malooly and remand for determination of the redemption amount. No costs are awarded.

**IT IS SO ORDERED.**

DONNELLY and HARTZ, JJ., concur.

HARTZ, Judge, concurring.

I join fully in Justice Minzner's opinion for the panel. I write separately only to urge the legislature to revisit NMSA 1978, Section 39–5–18 (Repl.Pamp.1991).

The advisability of statutory redemption, particularly redemption by lienholders, is a matter of some dispute. One purpose of statutory redemption, probably the principal purpose, is to encourage higher bidding at a foreclosure sale, because a bidder who bids "too little" risks losing the property when a party with a right of statutory redemption acquires the property from the bidder by simply paying the bid price plus interest. Yet, some authorities question whether statutory redemption laws actually accomplish this purpose. They express concern that the threat of statutory redemption may actually discourage bidders from entering the auction. *See* 3 Richard R. Powell, *Powell on Real Property* ¶ 470, at 37–366 (Patrick J. Rohan rev. ed. 1993). Moreover, when lienholders have a right of statutory redemption, they may sit out the bidding altogether; rather than competing with another bidder and bidding up the price, they can simply wait for the bidding among others to end and then redeem at that price plus any accrued interest.

In a state such as New Mexico which permits statutory redemption, it is not for a court to decide that statutory redemption is bad policy. But without knowing more about what policy considerations motivated the legislature to enact statutory redemption, the courts face great confusion and difficulty in determining whether a bare-bones statute like New Mexico's (1) permits successive redemptions, (2) gives any particular holder of a statutory right of redemption priority over another holder if only one redemption is permitted, and (3) requires a redeeming jun-

ior lienholder to pay a senior lien of a prior redeemer. To answer the third question, for example, it is important to know whether the grant to a lienholder of a statutory right of redemption is solely to encourage higher bidding at the foreclosure sale or whether it is to protect the specific interest of a lienholder in there being a bid high enough to pay all or part of its lien when the fair market value of the property is greater than the sum of all prior liens.

Both public policy and the interest in clarity of our statutes argue for legislative reexamination of Section 39–5–18. If the legislature continues to believe that a statutory right of redemption for lienholders is appropriate, litigation could be reduced and the specific goals of the legislature advanced by spelling out in the statute whether successive redemptions should be permitted, the proper procedure—including time limits—for successive redemptions, and the amount that a redeemer must pay to a prior redeemer. Because statutes in a number of other states have addressed these issues, the legislature can obtain substantial guidance by examining those statutes.