10 P.3d 863

2000-NMCA-083

**TPL, INC., Protestant–Appellant,**

v.

**NEW MEXICO TAXATION & REVENUE DEPARTMENT, Respondent–Appellee.**

No. 20,321.

Court of Appeals of New Mexico.

June 27, 2000.

Certiorari Granted, No. 26,505, Sept. 13, 2000.

Tracy J. Ahr, Claudia G. Crawford, Keleher & Mcleod, P.A., Albuquerque, NM, for Appellant.

Patricia A. Madrid, Attorney General, Bruce J. Fort, Special Assistant Attorney General, Santa Fe, NM, for Appellee.

## *OPINION*

PICKARD, Chief Judge.

{1} This appeal involves NMSA 1978, § 7–9–57 (1989), which permits a deduction from gross receipts tax for money received for the performance of certain services, but does not permit the deduction if the buyer of the service makes initial use or takes delivery of the "product of the service" in New Mexico. The central question on appeal is whether Taxpayer, whose services performed for a federal agency (Buyer) were the deconstruction of ammunition, ordnance, and other energetic material, was entitled to a deduction because its services allegedly did not result in a product and therefore it was impossible for Buyer to initially use or take delivery of a product in New Mexico. We uphold the hearing officer's decision that there was a product of the service which was used or for which delivery was taken in New Mexico. We also reject a number of Taxpayer's other contentions.

## BACKGROUND

{2} Taxpayer is a New Mexico corporation with offices in Albuquerque, New Mexico. Taxpayer provides deconstructive services, whereby it takes physical possession of energetic materials and then renders them inert through sophisticated processes it has developed. Buyer is a part of the United

542

States Army Materiels Central Command. Buyer is headquartered in Rock Island, Illinois.

{3} Taxpayer and Buyer entered into three demilitarization contracts between January 1992 and April 1997. The contracts were administered in Phoenix, Arizona, and were paid from Columbus, Ohio. Under the terms of these contracts, Buyer shipped surplus munitions to Taxpayer in New Mexico. Taxpayer assumed responsibility for deconstructing the munitions. In order to fulfill its responsibility, Taxpayer had to determine how to disassemble the munitions, actually disassemble the munitions, and then dispose of the munition residuals in a safe and environmentally responsible manner.

{4} Buyer retained ownership of the munitions until the demilitarization process was completed. After Taxpayer performed its deconstructive services, Buyer transferred title to all materials and components arising out of the disassembly and demilitarization of the munitions to Taxpayer. Taxpayer then assumed responsibility, as well as liability, for disposing the inert materials in a safe manner.

{5} In June 1997, the Department audited Taxpayer's gross receipts reporting practices for tax periods January 1992 through April 1997. The Department disallowed Taxpayer's claimed deductions of the receipts it had obtained from performing the three demilitarization contracts it had entered into with Buyer during that time frame. Taxpayer filed a written protest with the Department, which was submitted to the hearing officer for consideration.

{6} The hearing officer denied the protest on two bases. The hearing officer concluded that Buyer made initial use of the product in New Mexico when it transferred title to the inert materials and risk of loss to Taxpayer as consideration for the services performed. She also concluded that Buyer took delivery of the product in New Mexico because Taxpayer performed the services on property purportedly owned by Buyer in New Mexico.

## STANDARD OF REVIEW

{7} The issue presented for our review is whether the hearing officer properly denied Taxpayer's claimed gross receipts tax deductions on the grounds that Buyer initially used or took delivery of a product in New Mexico. *See* § 7–9–57. This issue requires us, in part, to answer a question of statutory interpretation, which we review de novo. *See Cox v. Municipal Boundary Comm'n*, 120 N.M. 703, 705, 905 P.2d 741, 743 (Ct.App.1995) (ruling that interpretation of a word as it appears in a statute presents a question of law); *Western Bank of Las Cruces v. Malooly*, 119 N.M. 743, 748, 895 P.2d 265, 270 (Ct.App.1995) (ruling that we review questions of law de novo). To the extent that we are asked to apply the law of gross receipts tax deductions to undisputed facts, we are again presented with a question of law, which we review de novo. *See Quantum Corp. v. Taxation & Revenue Dep't*, 1998–NMCA–050, ¶ 8, 125 N.M. 49, 956 P.2d 848.

{8} There is a statutory presumption that "all receipts of a person engaging in business are subject to the gross receipts tax." NMSA 1978, § 7–9–5 (1966). A taxpayer has the burden of overcoming the statutory presumption created by Section 7–9–5. *See Wing Pawn Shop v. Taxation & Revenue Dep't*, 111 N.M. 735, 741, 809 P.2d 649, 655 (Ct.App.1991). When a taxpayer claims a tax deduction, the statute giving rise to such a deduction "must be construed strictly in favor of the taxing authority, the right to the . . . deduction must be clearly and unambiguously expressed in the statute, and the right must be clearly established by the taxpayer." *Security Escrow Corp. v. Taxation & Revenue Dep't*, 107 N.M. 540, 543, 760 P.2d 1306, 1309 (Ct.App.1988). Put another way, taxation is the rule and the burden is on the taxpayer to bring itself within any claimed exception. *See NRA Special Contribution Fund v. Board of County Comm'rs*, 92 N.M. 541, 549, 591 P.2d 672, 680 (Ct.App.1978).

## DISCUSSION
## I. TAX DEDUCTION

{9} Taxpayer claims it is entitled to a gross receipts tax deduction under Section 7–

9–57. Section 7–9–57, as it existed during the relevant time period, provided in relevant part:

    A. Receipts from performing a service may be deducted from gross receipts if the sale of the service is made to a buyer who delivers to the seller either a nontaxable transaction certificate or other evidence acceptable to the secretary that the transaction does not contravene the conditions set out in Subsection C of this section.

    . . .

    C. Receipts from performance of a service shall not be subject to the deduction provided in this section if the buyer of the service or any of the buyer's employees or agents:

    (1) makes initial use of the product of the service in New Mexico; or

    (2) takes delivery of the product of the service in New Mexico.

*Id.* According to Taxpayer, it is entitled to a deduction because there was no product generated by its services. In the alternative, Taxpayer argues that even if such a product existed, Buyer did not initially use the product in New Mexico nor did it take delivery of the product in New Mexico. We address each argument in turn.

    A. *Product*

■ {10} Taxpayer claims that because the services it performed were deconstructive, "there simply is no 'product of the service.'" If this claim holds true, then it follows that Taxpayer is entitled to a deduction because Buyer cannot initially use or take delivery of something that simply does not exist. Taxpayer attempts to support its claim by resorting to a plain language analysis of Section 7–9–57(A) and, in particular, of the term "product," as that term is used in the statute.

■ {11} In construing a statute's meaning, we seek to "determine and give effect to the intention of the legislature." *Security Escrow Corp.*, 107 N.M. at 543, 760 P.2d at 1309. When the legislature has not defined a word in the statute, as in this case where it has failed to define product, we will give that word "its ordinary meaning unless

a different intent is clearly indicated." *Quantum Corp.*, 1998–NMCA–050, ¶ 10, 125 N.M. 49, 956 P.2d 848. If the language of a statute is unambiguous, the literal meaning of the words must be applied. *See Cummings v. X–Ray Assocs. of New Mexico, P.C.*, 1996–NMSC–035, ¶ 45, 121 N.M. 821, 918 P.2d 1321.

{12} Taxpayer asserts that the term product is defined in Webster's New Collegiate Dictionary as "something produced" and in Black's Law Dictionary as "[s]omething produced by physical labor or intellectual effort or something produced naturally or as a result of natural process as by generation of growth." The thrust of Taxpayer's assertion is that the term product refers to tangible objects that have been assembled or put together and not to items that have been pulled apart or broken down, as the energetic materials were in this case.

■ {13} The Department contends, and we agree, that Taxpayer's definition of product is unduly narrow and incomplete. In addition to the meanings provided by Taxpayer, the term product is defined in Webster's II New Riverside University Dictionary (Riverside Publishing, 1984) as "[a] direct result; consequence," in American Heritage Dictionary of the English Language (New College Edition, 1981) as "[a] direct result; consequence," and in World Book Dictionary (Doubleday & Co., 1972) as "that which is produced; result of work or growth." It is evident from the foregoing definitions that the term product refers not only to tangible objects that have been assembled, but also to results or consequences that might yield lesser objects, whether in terms of weight, quantity, or chemical composition, than existed prior to any action having been initiated.

{14} In the case at bar, we initially observe that the service provided by Taxpayer consisted of taking dangerous munitions located in New Mexico, rendering those munitions safe, and then disposing of or recycling those munitions. The product of those services was not only neutralized materials but, more importantly, the ability to dispose of the inert munitions in an environmentally reasonable way, as well. It was this ability

to safely dispose of the materials that Buyer bargained for when it entered into the demilitarization contracts with Taxpayer. That the inert munitions were disassembled and otherwise broken down into either their constituent parts or their component particles does not render the product of that service any less valuable, real, material, or substantial. Inert munitions are of immense value to a military agency seeking their disposal. To state otherwise is to suggest that Buyer gave consideration to Taxpayer for producing nothing.

### B. *Initial Use or Taking Delivery*

{15} Taxpayer claims the hearing officer erred when she concluded that Buyer made initial use or took delivery of the product in New Mexico when it transferred title to the inert materials to Taxpayer as consideration for the services performed. The parties dispute whether consideration was given or received when Buyer transferred title to the inert munitions to Taxpayer. This dispute does not impact our analysis one way or the other, so we do not attempt to resolve the matter in this appeal. It is dispositive that Buyer transferred title to the munitions when they were capable of being disposed- and Taxpayer admits this-and that this happened in New Mexico. *See Phillips Mercantile Co. v. Taxation & Revenue Dep't*, 109 N.M. 487, 488–89, 786 P.2d 1221, 1223–24 (Ct.App.1990) (ruling that an out-of-state buyer need not hold property in its hands in order to use the property or the service performed on the property for imposition of compensating tax); *Reed v. Jones*, 81 N.M. 481, 468 P.2d 882 (Ct.App.1970).

{16} In *Reed*, a business located in Texas sent one of its bread delivery trucks to a business located in New Mexico in order to receive mechanical repairs. *See id.* at 481–82, 468 P.2d at 882–83. After the repairs were accomplished, the bread truck was driven back to Texas. *See id.* This Court determined that the in-state taxpayer was not entitled to a gross receipts tax deduction because the bread truck was initially used in New Mexico. *See id.* We came to this decision despite the fact that the bread truck was destined for a delivery route in Texas.

It was enough that the product of the mechanic's service was a functioning vehicle, which vehicle was used in New Mexico when it became functional.

{17} In our view, Buyer made initial use or took delivery of the product generated by Taxpayer's services when it transferred title to the disposable materials to Taxpayer. This is true because the product in this case was inert munitions capable of being disposed. Initial use took place when Buyer employed the inert materials in a way that was consistent with its purpose for entering into the demilitarization contracts with Taxpayer in the first place; specifically, ridding itself of the responsibility of holding energetic materials. Under the terms of the contract and federal law, Buyer could achieve its goal of ridding itself of the responsibility of holding the materials only by relinquishing title to the materials to Taxpayer after the materials were rendered inert. That Buyer relinquished title to the disposable materials to Taxpayer while they were in New Mexico dictates the conclusion that Buyer used the product for its intended purpose in New Mexico and that Taxpayer was therefore not entitled to its claimed deduction. If we concluded otherwise, the purpose of the gross receipts tax would be undermined. *See Proficient Food Co. v. Taxation & Revenue Dep't*, 107 N.M. 392, 393, 758 P.2d 806, 807 (Ct.App.1988) (stating that the purpose of the gross receipts tax is that individuals should pay taxes for the "privilege of engaging in business within New Mexico."). We hold that Taxpayer did not meet its burden of overcoming the statutory presumption that the receipts in question were subject to gross receipts tax.

## II. FAIR HEARING

{18} Taxpayer claims the hearing officer's decision should be overturned because she (1) reached legal conclusions based on evidence and theories that varied from those advanced by the parties and (2) denied Taxpayer the opportunity to present evidence in support of its theory that it engaged in a transaction for the sale of the materials with the federal government. We address, and

then reject, each one of Taxpayer's claims in turn.

### A. *Legal Conclusions*

{19} Taxpayer claims the hearing officer demonstrated bias and abused her discretion by "search[ing] through the details of the contracts ... to find support for her theor[ies]." Taxpayer cites no case law, and we have found none, that stands for the proposition that a hearing officer cannot make her own determination of the legal significance of exhibits and other evidence the parties have submitted for her consideration. What the hearing officer did in the case at bar is what we and what all other judges and hearing officers do every day; specifically, decide cases in accordance with the law and the facts as we view them. Neither judges nor hearing officers are limited word-for-word to the parties' arguments.

{20} Taxpayer may have a legitimate complaint to the extent that the hearing officer inferred that consideration was given for the transfer of title to the deconstructed munitions for all three contracts. Taxpayer's complaint in this regard would be legitimate inasmuch as it contends it could have presented evidence to rebut the inference that consideration was exchanged for two of the contracts. However, Taxpayer does not dispute any of the facts that we have relied upon for affirmance. The hearing officer's decision is amply supported by her conclusion that Buyer made initial use of the product in New Mexico when it transferred title to the materials to Taxpayer after they were rendered inert and made disposable. Taxpayer does not dispute this. The hearing officer found it significant that the neutralized materials remained in New Mexico. Again, Taxpayer had an opportunity to contest whether the neutralized materials had in fact remained in New Mexico. That being the case, we will not reverse the decision on the basis of Taxpayer's claim that the hearing officer considered facts not offered by a party and that were subject to dispute. *See State ex rel. Martinez v. Lewis*, 116 N.M. 194, 206, 861 P.2d 235, 247 (Ct.App.1993) (holding that erroneous findings of fact not necessary to support the judgment are not

grounds for reversal).; *In re Estate of Heeter*, 113 N.M. 691, 695, 831 P.2d 990, 994 (Ct.App.1992) ("On appeal, error will not be corrected if it will not change the result."); *Westland Dev. Co. v. Romero*, 117 N.M. 292, 293, 871 P.2d 388, 389 (Ct.App.1994) ("An appellate court will affirm a lower court's ruling if right for any reason.").

{21} Taxpayer's claim that the hearing officer was biased is undermined by the fact that the hearing officer ruled against the Department on a number of issues presented for her review at the hearing—issues that do not form a part of the instant appeal. This fact supports the conclusion that the hearing officer was not biased. *See Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) (stating that there is a presumption of honesty and integrity applicable to administrative adjudication officers).

### B. *Evidence Presented*

{22} Taxpayer claims the hearing officer demonstrated bias and abused her discretion by denying Taxpayer "the opportunity to present evidence in support of its alternative theory concerning a deduction for the sale of materials to the government ...." Although this alternative theory was not set forth in the prehearing statement of issues, Taxpayer contends that it should nevertheless have been allowed to present evidence on the matter at the hearing because it raised the issue in its formal protest.

{23} Taxpayer cites no case law, and we have found none, that stands for the proposition that a hearing officer abuses her discretion by failing to admit evidence that was not listed in the prehearing order. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). This in and of itself is enough to reject Taxpayer's claim. In addition, however, it appears from the record that Taxpayer failed to tender any evidence on this issue at the hearing, but instead waited until forty days after the hearing was conducted to tender such evidence, which it did with its post-hearing brief. Accordingly, we will not reverse the hearing officer's decision on this basis. *See* NMSA 1978, § 7-1-24(G) (1993) (requiring that hearings be conducted "so that both complaints and defenses

are amply and fairly presented."); 3 NMAC 1.8.8.2 ("Every party shall have the right of due notice, cross-examination, presentation of evidence, objection, motion, argument and all other rights essential to a fair hearing.").

## III. CONSTITUTIONAL CLAIMS

{24} Taxpayer claims that the hearing officer's decision should be overturned because it violates (1) the equal protection clauses of our state and federal constitutions, (2) the federal commerce clause, (3) the due process clauses of our state and federal constitutions, and (4) the state constitutional right that taxes be applied uniformly and equally. We address, and then reject, each one of Taxpayer's claims in turn.

### A. Equal Protection

{25} Taxpayer claims the Department violated its right to equal protection by arguing that Taxpayer contracted to perform services for the federal government as a single, unitary entity, rather than for Buyer as an individual agency. The Department admits that its position in the case at bar is a departure from its earlier practices in this regard. Whether the Department's admitted departure constitutes an equal protection violation is irrelevant in this case, however, because the hearing officer did not base her decision on the Department's position, nor have we. *See In re Estate of Heeter*, 113 N.M. at 695, 831 P.2d at 994 ("On appeal, error will not be corrected if it will not change the result.").

### B. Commerce Clause

{26} Taxpayer claims the hearing officer's decision violates the federal commerce clause because it unlawfully discriminates against interstate commerce. A state tax withstands a commerce clause challenge when the tax (1) is applied to an activity having a substantial nexus with the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services provided by the taxing state. *See Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). When services are performed entirely within the taxing state, the commerce clause is not violated by the imposition of a gross receipts tax. *See Mountain States Adver., Inc. v. Bureau of Revenue*, 89 N.M. 331, 333, 552 P.2d 233, 235 (Ct.App.1976); *Markham Adver. Co. v. Bureau of Revenue*, 88 N.M. 176, 177, 538 P.2d 1198, 1199 (Ct.App.1975).

{27} In the case at bar, the Department imposed gross receipts tax on the receipts Taxpayer obtained in exchange for performing deconstructive services for Buyer in New Mexico. No tax was imposed on receipts Taxpayer obtained in exchange for providing services outside New Mexico because no such services were rendered. *See Mountain States Adver., Inc.*, 89 N.M. at 333, 552 P.2d at 235. Accordingly, we reject Taxpayer's commerce clause argument.

### C. Due Process

{28} Taxpayer claims the hearing officer's decision violates its right to due process because the decision rests "on arguments and analysis [Taxpayer] had no opportunity to address." As we stated above, there is no merit to this claim. The hearing officer properly based her decision on the exhibits and other evidence the parties submitted for her review. The hearing officer's decision is supported by her conclusion that Buyer made initial use of the product in New Mexico when it transferred title to the materials to Taxpayer after they were rendered inert and made capable of disposal. Taxpayer had an opportunity to respond to this issue at the formal hearing, so we will not reverse the decision on this due process argument. *See In re Estate of Heeter*, 113 N.M. at 695, 831 P.2d at 994 ("On appeal, error will not be corrected if it will not change the result."); *Westland Dev. Co.*, 117 N.M. at 293, 871 P.2d at 389 ("An appellate court will affirm a lower court's ruling if right for any reason.").

### D. Uniformity Clause

{29} Taxpayer claims the hearing officer's decision violates New Mexico's constitutional requirement that taxes be applied uniformly and equally. *See N.M. Const.*, art. VIII, § 1. The uniformity clause provides in relevant part:

Taxes levied upon tangible property shall be in proportion to the value thereof, and taxes shall be equal and uniform upon subjects of taxation of the same class. Different methods may be provided by law to determine value of different kinds of property, but the percentage of value against which tax rates are assessed shall not exceed thirty-three and one-third percent.

{30} Taxpayer's claim, as the cited text would suggest, is without merit because the uniformity clause is concerned with the taxation of property, not services. *See Sunset Package Store, Inc. v. City of Carlsbad,* 79 N.M. 260, 262, 442 P.2d 572, 574 (1968) (ruling that "the tax involved is a privilege tax, ... as such, it is in the nature of a nonproperty tax to which Art. 8, § 1, is not applicable."). There is no basis upon which we may apply the uniformity clause to the case at bar. That being the case, we will not reverse the hearing officer's decision on this claim.

**CONCLUSION**

{31} For the reasons stated, we affirm.

{32} **IT IS SO ORDERED.**

APODACA and ARMIJO, JJ., concur.