This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**NEW MEXICO TAXATION AND REVENUE DEPARTMENT,**

Petitioner-Appellant,

v.                                                    **No. 32,940**

**CASE MANAGER (TERESA MAESTAS),**

Respondent-Appellee,

**IN THE MATTER OF THE PROTEST OF CASE MANAGER**.

**APPEAL FROM THE TAXATION AND REVENUE DEPARTMENT**
**Brian VanDenzen, Hearing Officer**

NM Department of Taxation and Revenue
Hector H. Balderas, Attorney General
Nelson J. Goodin, Special Assistant Attorney General
Santa Fe, NM

for Appellant

Teresa Maestas
Medanales, NM

Pro Se Appellee

### MEMORANDUM OPINION

**ZAMORA, Judge.**

{1} Teresa Maestas (Taxpayer), claiming a gross receipts tax deduction pursuant to NMSA 1978, Section 7-9-48 (2000), submitted the wrong form to support her claimed deduction. By the time Taxpayer obtained the correct form the deadline for submission had passed. Taxes were assessed and Taxpayer protested. The New Mexico Department of Taxation and Revenue Hearing Bureau (the Bureau) determined that Taxpayer was entitled to the claimed deduction. Although we differ somewhat in our legal analysis, we affirm.

**BACKGROUND**

{2} While the parties are familiar with the facts, the time line in this case is important to this Court's decision. We will therefore be setting forth the factual background in more detail than is generally necessary for a memorandum opinion. Taxpayer worked as a case manager for the developmentally disabled across Northern New Mexico. She provided case-management services as an independent contractor for Visions Case Management, Inc. (Visions). Visions resold Taxpayer's services to the New Mexico Department of Health. Visions paid gross receipts taxes on the resale of Taxpayer's services.

{3} On August 13, 2012, the New Mexico Department of Taxation and Revenue (the Department) sent Taxpayer a notice that it would be conducting a limited scope audit and requested that she provide Non-Taxable Transaction Certificates (NTTCs)

to show that her gross receipts for 2008 and 2009 were not subject to taxation. The notice gave Taxpayer sixty days or until October 12, 2012, to respond. The notice identified Laura Gage, a Department employee, as Taxpayer's point of contact.

{4}     Taxpayer called Ms. Gage three times in October 2012 to inquire about the documentation she was required to provide. Taxpayer never received a return call. Taxpayer went to the Department's field office in Santa Fe to inquire about the documentation she was required to provide. Taxpayer was advised to submit all her paperwork to Ms. Gage. Ten days after the original deadline, Ms. Gage sent a letter on October 22, 2012, to Taxpayer advising her that she had until October 31, 2012, to provide the documentation requested in the August 13, 2012, notice. In response to this letter, Taxpayer once again attempted to reach Ms. Gage telephonically to determine what information or documentation she needed to provide. Again, she never received a return call.

{5}     Taxpayer requested and received an NTTC from Visions. She submitted the NTTC along with her 2008 federal Schedule C and her 2009 federal 1099-MISC form directly to Ms Gage via facsimile by the October 31 deadline. It was not until November 6, 2012, that Ms. Gage sent Taxpayer a letter informing her that she had submitted a Type 2 NTTC for tangible goods instead of a Type 5 NTTC for services, that all deadlines for the audit had expired and that the Department would be assessing

gross receipts tax based on the gross receipts Taxpayer reported to the IRS on her Schedule C form. The Department did not challenge the timeliness of Taxpayer's submission.

{6}    On November 13, 2012, the Department assessed Taxpayer's gross receipts tax for 2008, including penalties and interest to be $3,364.38, taxes were also assessed for 2009, however, Taxpayer only protested the 2008 assessment. On January 9, 2013, the Department's protest office sent Taxpayer a letter informing her that she was liable for assessed gross receipts taxes for 2008 unless she could produce a Type 5 NTTC from Visions dated by the due date of the transaction, or by the expiration of the sixty-day period she was given in the notice of audit October 12, 2012. The Department gave Taxpayer until January 25, 2013, to submit the properly dated Type 5 NTTC. In a follow up letter dated January 17, 2013, and after receipt of the Department's audit file, the protest office notified Taxpayer that the time to submit the Type 5 NTTC had passed.

{7}    It is unclear from the record when Taxpayer requested the Type 5 NTTC from Visions, but on March 14, 2013, Visions executed a Type 5 NTTC for Taxpayer. Visions also wrote a letter to the Department dated April 2, 2013, accepting responsibility for the gross receipts taxes associated with the services performed by Taxpayer. Visions' letter explained that it had initially issued the incorrect type of

NTTC to Taxpayer but had subsequently issued the correct type of NTTC in an effort to remedy the situation.

**{8}** An administrative hearing before the Bureau was held on April 4, 2013. The Bureau concluded that Taxpayer was entitled to the claimed deduction under the safe harbor provision of NMSA 1978, Section 7-9-43(A) (2011). Taxpayer's protest was granted. This appeal followed.

**DISCUSSION**

**{9}** On appeal, the Department argues that Taxpayer is not entitled to her claimed deduction because she failed to timely submit the correct type of NTTC to support her deduction and because the safe harbor provision does not apply. We conclude that, under the circumstances of this case, Taxpayer established her entitlement to the claimed deduction. We need not decide whether the safe harbor provision applies here because we may uphold the Bureau's decision if it is right for any reason. *See Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 18, 146 N.M. 256, 208 P.3d 901. Under the right for any reason doctrine, appellate courts may affirm a lower court's decision if it is right for any reason, "so long as the circumstances do not make it unfair to the appellant to affirm." *Id.* Appellate courts may take such action "if those grounds do not require us to look beyond the factual allegations that were raised and considered below." *Id.* (internal quotation marks and citation omitted); *see Jaramillo*

*v. Jaramillo*, 1991-NMSC-101, ¶ 15, 113 N.M. 57, 823 P.2d 299 ("A [forum's] decision will be affirmed on review if that decision was correct, even though the court may have used an incorrect rationale in arriving at its result."). Because our decision does not require us to look beyond the factual allegations raised and considered below and because the Department's argument before the Bureau and on appeal rests primarily with the incorrect NTTC submitted by Taxpayer, it is not unfair to the Department for us to resolve this case on that basis.

{10} We do not address any argument the Department makes related to 3.2.201.9(E) NMAC (5/31/2001), and the extent to which it precludes deductions from gross receipts tax where a taxpayer does not have the correct form to support the taxpayer's specific type of claimed deduction. This issue is raised for the first time on appeal, and as a result, Taxpayer was not given an opportunity to respond to the argument and no decision on the issue was fairly invoked by the Bureau. *See* Rule 12-216(A) NMRA ("To preserve a question for [appellate] review it must appear that a ruling or decision by the [tribunal] was fairly invoked[.]"); *see also Garcia ex rel. Garcia v. La Farge*, 1995-NMSC-019, ¶ 27, 119 N.M. 532, 893 P.2d 428 (stating that the preservation rule serves to allow the opposing party a fair opportunity to argue the issue and to alert the lower court to the claim of error giving the court an opportunity to correct any mistake).

**Standard of Review**

{11}    When reviewing the Department's decision we can reverse the decision and order only if we conclude that it is "(1) arbitrary, capricious[,] or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law." *ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 4, 125 N.M. 244, 959 P.2d 969 (internal quotation marks and citation omitted); *see Arco Materials, Inc. v. Taxation & Revenue Dep't*, 1994-NMCA-062, ¶ 2, 118 N.M. 12, 878 P.2d 330, *rev'd on other grounds sub nom. Blaze Constr. Co. v. Taxation & Revenue Dep't*, 1994-NMSC-110, 118 N.M. 647, 884 P.2d 803; *see also* NMSA 1978, § 7-1-25(C) (1989) (same). In reviewing for sufficiency of the evidence we look to the whole record and review the evidence, in the light most favorable to the agency's findings. *Wing Pawn Shop v. Taxation & Revenue Dep't*, 1991-NMCA-024, ¶ 8, 111 N.M. 735, 809 P.2d 649.

**Taxpayer Established Her Entitlement to the Claimed Gross Receipts Tax Deduction**

{12}    The New Mexico gross receipts tax is assessed upon "any person engaging in business in New Mexico." NMSA 1978, § 7-9-4(A) (2010). Gross receipts includes consideration received for performing services in the state. NMSA 1978, § 7-9-3.5(A)(1) (2007). By statute "it is presumed that all receipts of a person engaging in business are subject to the gross receipts tax." NMSA 1978, § 7-9-5(A) (2002). "A

7

taxpayer has the burden of overcoming the statutory presumption created by Section 7-9-5" and establish that the taxpayer is entitled to any claimed deduction. *TPL, Inc. v. Taxation & Revenue Dep't*, 2000-NMCA-083, ¶ 8, 129 N.M. 539, 10 P.3d 863, *rev'd on other grounds*, 2003-NMSC-007, 133 N.M. 447, 64 P.3d 474; *Wing Pawn Shop*, 1991-NMCA-024, ¶ 16.

{13}     The New Mexico Gross Receipts and Compensating Tax Act (the Act), NMSA 1978, §§ 7-9-1 to -114 (1966, as amended through 2011), provides numerous deductions and exemptions to gross receipts tax. *See* §§ 7-9-13 to -41.4. Relevant here is Section 7-9-48 that allows a seller to deduct sales of services to a buyer who resells the services in the ordinary course of business. *See* § 7-9-43(A). The buyer is required to deliver an NTTC to the seller. *Id.* If the seller does not have possession of the NTTC within the time permitted, the deductions claimed shall be disallowed. Section 7-9-43(B). "[T]he [NTTCs] shall contain the information and be in a form prescribed by the [D]epartment[,] . . . [and a] properly executed [NTTC] shall be conclusive evidence, . . . that the proceeds from the transaction are deductible from . . . gross receipts." Section 7-9-43(A).

{14}     The Department's regulations limit the use of NTTCs to buyers that have applied for and received authority to issue the NTTCs. 3.2.201.9(A) NMAC. The Department issues serially numbered NTTC forms to authorized buyers. 3.2.201.9(C)

8

NMAC. Each type of NTTC relates to a particular type of deduction. 3.2.201.8(C) NMAC (12/14/2012). Buyers are responsible for completing, executing, and issuing to the seller, each NTTC form. 3.2.201.9 NMAC. Sellers are required to accept the correct type of NTTC. *See id.* The Department prohibits use of NTTCs by anyone other than the person to whom it was issued and may require buyers to account for each NTTC issued. 3.2.201.9(F) NMAC.

{15} Here, the Department, relies on *Proficient Food Co. v. Taxation and Revenue Dep't*, claiming that Taxpayer waived her right to the claimed deduction by failing to submit the correct type of NTTC within the time allowed. 1988-NMCA-042, ¶ 22, 107 N.M. 392, 758 P.2d 806 ("Where a party claiming a right to an exemption or deduction fails to follow the method prescribed by statute or regulation, he waives his right thereto."). We believe the Department misconstrues the applicability of *Proficient Food Co.* to the facts of this case.

{16} In *Proficient Food Co.*, a foreign corporation sold goods to another company for use in New Mexico. *Id.* ¶ 3. The corporation deducted receipts from these sales, but did not submit a supporting NTTC to the department. *Id.* ¶ 5. Instead, the corporation obtained from the buyer a form entitled "Blanket Exemption Certificate." *Id.* (internal quotation marks omitted). The form contained the general information needed, however, it was neither serially numbered for verification purposes nor issued

by the department. *Id.* ¶ 20. The department argued that allowing buyers to use their own forms in place of NTTCs would eliminate the department's ability to control the "dispensing of, accounting for, and revoking of a buyer's authority to use the NTTCs[,]" which is necessary for enforcing buyer registration requirements and for "closely scrutinizing the deductions claimed." *Id.* ¶ 21. This Court concluded that because the "Blanket Exemption Certificate" submitted by the corporation "was not in a form prescribed by the [d]epartment and would require revamping of the [d]epartment's processing and verification procedures[,]" it was insufficient to support the corporation's claimed deduction. *Id.* ¶¶ 20, 22.

{17}     The present case is distinguishable from *Proficient Food Co.* Here, both NTTCs provided by Visions are the Department's issued and serially numbered for verification purposes. The NTTCs are properly completed containing the required information and properly executed. Acceptance of the NTTCs to support Taxpayer's deduction would not disrupt the Department's ability to scrutinize the deduction or to ensure Visions' compliance with buyer registration requirements. It would not require the Department to alter its verification and processing procedures.

{18}     Moreover, the Department does not dispute that Taxpayer's transactions were nontaxable under Section 7-9-48. The Department does not dispute that Visions mistakenly issued Taxpayer a Type 2 NTTC, which Taxpayer timely submitted to the

10

Department, or that Visions attempted to correct its error by issuing the Type 5 NTTC which would have established Taxpayer's claimed deduction had been timely issued. Rather, the Department appears to be arguing that Taxpayer's deduction that is otherwise allowable, should be disallowed here because Taxpayer had the wrong form at the right time and the right form at the wrong time. This argument exalts form over substance.

**{19}** Tax statutes must "be given a fair, unbiased, and reasonable construction, without favor or prejudice to either the taxpayer or the [s]tate, to the end that the legislative intent is effectuated and the public interests to be subserved thereby are furthered." *Chavez v. Comm'r of Revenue*, 1970-NMCA-116, ¶ 7, 82 N.M. 97, 476 P.2d 67. Provisions for tax exemptions or deductions must be construed narrowly but must also be construed *reasonably*. *Id.* Section 7-9-48, at issue here, allows a seller to deduct sales of services to a buyer who resells the services in the ordinary course of business where the buyer delivers an NTTC to the seller, and the resale is subject to the gross receipts tax. "[T]he purpose of deductions or exemptions for sales for resale in the ordinary course of business is to prevent double taxation." *Pub. Serv. Co. of N.M. v. Taxation & Revenue Dep't*, 2007-NMCA-050, ¶ 34, 141 N.M. 520, 157 P.3d 85.

**{20}** Here, the Department seeks to collect doubly on the receipts for Taxpayer's resold services. Taxpayer's transactions were nontaxable under Section 7-9-48. Taxpayer sold her services to Visions, who resold them in the regular course of business. Visions delivered NTTCs to Taxpayer to support the claimed deduction, and Visions paid the gross receipts tax on the services upon their resale. The fact that Visions initially issued the incorrect type of NTTC should not entitle the Department to collect double taxation in direct contravention with the purpose of the statute. Visions corrected its error and issued Taxpayer the correct type of NTTC. Had any of Taxpayer's attempts to contact the Department for clarification on the requested documentation been successful, Visions may have had the opportunity to correct its error prior to the expiration of Taxpayer's deadline. We do not believe that reversing the Bureau's determination would reflect a fair or reasonable construction of the Act or the deductions provided for therein where Taxpayer established her entitlement to the claimed gross receipts tax deduction. *See Proficient Food Co.*, 1988-NMCA-042, ¶ 22 (stating that this Court does "not favor a rule which exhaults [sic] form over substance").

**CONCLUSION**

**{21}** For the foregoing reasons, we affirm.

{22}   **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**JONATHAN B. SUTIN, Judge**